**UNITED STATES of America**

v.

**Justin R. TUCKER, John F. Torizzo and Roche M. Passero.**

**Crim. No. 12672.**

United States District Court,
D. Connecticut.

July 8, 1970.

F. Mac Buckley, Asst. U. S. Atty., Hartford, Conn., for plaintiff.

Thomas J. Groark, Jr., Day, Berry & Howard, Hartford, Conn., for defendant Justin R. Tucker.

Jerome E. Caplan, Hartford, Conn., for defendant Roche M. Passero.

## RULING ON MOTIONS TO SUPPRESS OF DEFENDANTS, JUSTIN R. TUCKER AND ROCHE M. PASSERO

CLARIE, District Judge.

The defendant Tucker is charged with receiving money or other things of value, while an officer of a bank insured by the Federal Deposit Insurance Corporation, for endeavoring to procure and for procuring loans from said bank for third parties in violation of 18 U.S.C. § 215. He is also charged with conspiracy to violate 18 U.S.C. § 215, along with co-defendants Torizzo and Passero. Tucker and Passero have moved to suppress certain evidence claimed to have been obtained in violation of federal law. The facts relevant to the motions to suppress are as follows:

In the course of a routine audit of Tucker's tax returns, the Internal Revenue Agent conducting said review noted a potential violation of 18 U.S.C. § 215. This information was conveyed to the Audit Division and from there to the Intelligence Division of the Internal Revenue Service. On February 7, 1968, the Director of the Intelligence Division, R. K. Lund, sent the following letter to United States Assistant Attorney General Vinson:

> "During a recent tax examination, information was developed indicating possible violations of Section 215, Title 18, U.S. Code, by the captioned taxpayer.
>
> "We shall be glad to furnish additional details upon appropriate request to the Commissioner."

Vinson's reply letter, dated February 19, 1968, to the Commissioner of Internal Revenue stated:

> "By a letter dated February 7, 1968, Mr. R. K. Lund, Director, Intelligence Division, advised that during a recent tax examination of Justin R. Tucker, 11 Ranger Lane, West Hartford, Connecticut, information was developed indicating possible violations of Section 215, Title 18, United States Code.
>
> "We would appreciate receiving complete details of these potential violations."

In response, Vinson received a letter from the Assistant Commissioner of Internal Revenue, dated April 3, 1968, detailing the facts upon which the possible criminal violation rested. It was not until July 15, 1968, that the Department of Justice requested the Federal Bureau of Investigation (FBI) to investigate the matter and thereafter an FBI agent had made available to him the information in the tax returns and the administrative tax files of the defendant. This was carried out pursuant to exchange of correspondence as hereinbefore described.

The motions to suppress are based essentially on two grounds: (1) that the initial letter from Lund to the Department of Justice revealed information in violation of 26 U.S.C. § 7213, and (2) even if Lund's action was not in violation of 26 U.S.C. § 7213, the subsequent request for further information made by Vinson in response to Lund's letter was not made in accordance with the regulations governing such requests and was

thus insufficient to support the disclosure letter from the Assistant Commissioner of Internal Revenue and the subsequent availability of the defendant's tax return to the FBI.

▆▆▆▆ The government challenges the standing of any of the defendants to complain of the inspection of the tax records of anyone other than his own personal returns. Along with the individual returns of each of the defendants there is also involved here, or there may be so involved, returns of a partnership and a corporation, wherein some or all of the defendants are respectively partners and/or directors, officers and/or stockholders. Such an interest is sufficient to afford standing to move to suppress any evidence derived from such returns. As to the standing of one defendant to move to suppress the information stemming from the tax returns of the others' tax files, this too is present. The government has alleged a conspiracy. The filing of the respective tax returns of the defendants for the years involved are alleged to be part of the overt acts involved in the conspiracy in paragraphs (fff), (ggg), (hhh), (mmm), (nnn), and (sss) of the government's Bill of Particulars. Each defendant, therefore, has an interest in the returns of the others sufficient to grant him standing to move to suppress any evidence emanating from them. Rosencranz v. United States, 354 F.2d 738, 740 (1st Cir. 1964). With this preliminary question out of the way, defendants' motions may be disposed of on the merits.

The defendants first argue that the letter from Lund alerting the Justice Department to the potential violation of 18 U.S.C. § 215, constituted a violation of 26 U.S.C. § 7213; the applicable portion of which reads as follows:

"§ *7213(a) (1)*—It shall be unlawful for any officer or employee of the United States to divulge or make known in any manner whatever *not provided by law* to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof or any book containing any abstract or particulars thereof to be seen or examined by any person except as provided by law; and it shall be unlawful for any person to print or publish in any manner whatever not provided by law any income return, or part thereof or source of income, profits, losses, or expenditures appearing in any income return; * * * " (Emphasis added.)

The exception in said statute which states: "in any manner whatever not provided by law" refers to 26 U.S.C. § 6103. It gives to the President of the United States the power to promulgate rules and regulations permitting the inspection of such records. These regulations appear in 26 C.F.R. § 301.6103(a) et seq. At the time the Lund letter first alerted the Attorney General, no effort had been initiated by him to comply with these regulations.

The defendants claim that Director Lund's letter in and of itself constitutes the revelation of information in contravention of 26 U.S.C. § 7213(a) (1), in that no attempt had been made first, to comply with 26 U.S.C. § 6103 and the regulations promulgated thereunder. The defendants represent that the mere disclosure of the potential existence of a violation of 18 U.S.C. § 215 is tantamount to the publication of a source of defendant Tucker's income, in that the natural result of this information would be to invite a request by the Justice Department for further details wherein the actual source would come to light. It was argued in the alternative that the representation of the probable existence of a potential violation under 18 U.S.C. § 215, is tantamount to the revelation of a source of income, in that this necessarily implies that a bank officer, director, employee, agent or attorney of any bank was receiving something of value for the procurement or attempt-

ed procurement of a loan from said bank. These arguments are not persuasive.

The mere furnishing by the Internal Revenue Service to the Department of Justice of the name and address of an individual, who may have violated federal law, is not prohibited by 26 U.S.C. § 7213(a) (1). This information was ascertained from a routine check of the individuals' income tax returns. Lund's letter did not reveal "the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income tax return" as is prohibited by law. 26 U.S.C. § 7213. *Cf.* Mares v. United States, 383 F.2d 805, 810 (10th Cir. 1967). While most assuredly the Justice Department, in the conscientious performance of its duties, would desire to have more information concerning this possible criminal act, this does not change the above result. The purpose of § 7213 "appears to be to prevent wholsesale revelation of confidential information to persons not determined to have a legitimate interest therein." Tollefsen v. Phillips, 16 F.R.D. 348, 349 (D.Mass. 1954); Kingsley v. Delaware, Lackawanna & Western R. Co., 20 F.R.D. 156, 159 (S.D.N.Y.1957). It also serves to encourage the full and accurate reporting of income for tax purposes. Neither of these objectives are frustrated or materially curtailed by this decision. To rule otherwise would impair the right and duty of every citizen of the United States to inform the proper authorities of violations of the law. See In re Quarles and Butler, 158 U.S. 532, 535–536, 15 S. Ct. 959, 39 L.Ed. 1080 (1895).

Defendants further claim that even if the initial letter from Lund to Vinson was not sent in violation of 26 U.S.C. § 7213(a) (1), their motion should still be granted in that the Justice Department did not follow the applicable regulations in ascertaining the details of the potential violation. This position relates back to the § 7213 violation claim, in that if the applicable regulations were not followed all disclosures as to sources of income, etc., would not have been as

"provided by law". The distinction between this claim and the prior one is that here, there has been at least a purported compliance with the regulations. This was not the existing circumstance when the Lund letter first alerted the Justice Department of the possibility of a violation.

Procedurally, this case presents the inverse situation from that which is normally the case, where the Justice Department itself first seeks the tax returns and related information. That department generally has certain individuals under investigation and seeks said returns and/or information incidental to their investigation. However, in the case at bar, it was the Internal Revenue Service which first became aware of a potential criminal violation outside the scope of any tax violation and brought this to the attention of the Criminal Division of the Justice Department. The regulations dealing with the permissive inspection of tax records did not specifically anticipate the sequence of the development of information in this situation. Thus, the overall relationship of the correspondence between the two departments must be viewed in its totality in reaching a determination, as to whether or not the regulations have been complied with.

The government relies on 26 C.F.R. §§ 301.6103(a)–1(f) and (g) and 26 C.F.R. §§ 301.9000–1(c) and (d), as support for its position. It claims that the letter from Assistant Attorney General Vinson justified the response which he received from the Assistant Commissioner of Internal Revenue and the subsequent permission granted to the FBI to inspect the applicable tax records. Section 301.-6103(a)–1(f) is inapplicable here, in that that section only applies to requests for the inspection of tax records made by "the head of an executive department * * * or of any other establishment of the Federal Government." The sections applicable to this case provide:

"(g) *Inspection of returns by U.S. attorneys and attorneys of Department*

of Justice. A return in respect of any tax described in paragraph (a) (2) of this section shall be open to inspection by a U.S. attorney or by an attorney of the Department of Justice where necessary in the performance of his official duties. The application for inspection shall be in writing and shall show (1) the name and address of the person for whom the return was made, (2) the kind of tax reported on the return, (3) the taxable period covered by the return, and (4) the reason why inspection is desired. The application shall, where the inspection is to be made by a U.S. attorney, be signed by such attorney, and, where the inspection is to be made by an attorney of the Department of Justice, be signed by the Attorney General, Deputy Attorney General, or an Assistant Attorney General. The application may be addressed to the Commissioner of Internal Revenue, Washington, D.C. 20224 or to the internal revenue officer (district director or Director of International Operations) with whom the return was filed." 26 C.F. R. § 301.6103(a)–1(g).

"(c) *Disclosure of internal revenue records or information prohibited without prior approval of the Commissioner.* The disclosure, including the production, of internal revenue records or information to any person outside the Treasury Department or to any court, administrative agency, or other authority, in response to any request or demand for the disclosure of such records or information shall be made only with the prior approval of the Commissioner. However, nothing in this section shall restrict the disclosure of internal revenue records or information which the Commissioner has determined is authorized under any provision of statute, Executive order, or regulations, or for which a procedure has been established by the Commissioner. * * * " 26 C.F.R. § 301.9000–1(c).

"(d) *Delegation to Commissioner of Authority to determine disclosure and establish procedures; procedure in the event of a request or demand for disclosure*—(1) *Delegation to Commissioner.* The Commissioner is hereby authorized to determine whether or not officers and employees of the Internal Revenue Service will be permitted to disclose internal revenue records or information in response to:

(i) A request by any court, administrative agency, or other authority, or by any person, for the disclosure of such records or information, or

(ii) A demand for the disclosure of such records or information." 26 C.F.R. § 301.9000–1(d).

■ The letter from Vinson to the Commissioner of Internal Revenue only sets forth one of the four requirements enumerated in § 301.6103(a)–1(g), i.e., the name and address of the taxpayer. When Vinson's letter is read in conjunction with that of Lund, it becomes obvious that it was intended to allow for further investigation into a potential violation. The remaining two requirements of the regulation could not be literally complied with, due to the unusual method by which the investigation arose. Vinson did not know the kind of tax return reported nor the years involved. These requirements were designed within the spirit of the statutes to prevent the Justice Department, or any other agency seeking such information, from engaging in a fishing expedition with respect to a particular taxpayer. This danger was not present here, since the Internal Revenue Service already knew the kind of taxes and the years involved. Thus, the Vinson letter, expressly or by implication, in the totality of the correspondence, fulfilled all the essential requirements of 26 C.F. R. § 301.6103(a)–1(g).

Since the requirements of 26 C.F.R. § 301.6103(a)–1(g) have been satisfied, the reply letter from the Assistant Commissioner of Internal Revenue and the subsequent inspection of the relevant tax returns and related records by the FBI,

acting as the investigatory arm of the Department of Justice, were both within the purview and spirit of 26 C.F.R. § 301.6103(a)–2 and 26 C.F.R. § 301.9000–1(c) and (d). Since no violation of 26 U.S.C. § 7213 is present, the defendants' motions to suppress are denied. So ordered.