**UNITED STATES of America and Michael R. McDonald, Special Agent, Internal Revenue Service, Petitioners,**

v.

**Edwin SAPP, Respondent,**
and
**William F. Pelski and Eva Pelski, Intervenors.**

**No. FL 73–125–Civ–NCR.**

United States District Court,
S. D. Florida,
Fort Lauderdale Division.

Jan. 30, 1974.

James H. Jeffries, Jon R. Eggleston, Tax Div., U. S. Dept. of Justice, Washington, D. C., Robert Rust, U. S. Atty., Robert N. Reynolds, Asst. U. S. Atty., Miami, Fla., for petitioners.

Louis J. DeReuil, Isley & DeReuil, Fort Lauderdale, Fla., for respondent.

Theodore Klein, Fine, Jacobson, Block & Semet, Miami, Fla., for intervenors.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROETTGER, District Judge.

### FINDINGS OF FACT

The United States of America sought to obtain a ledger of individual taxpayers for the calendar years 1971 and 1972 by a summons directed to the respondent, Edwin Sapp, a certified public accountant. The taxpayers, Mr. and Mrs. William F. Pelski, demanded of Mr. Sapp that he not turn over the ledger and claimed a privilege under the Fifth Amendment. The taxpayers moved to intervene and were permitted to do so by the court.

The second matter treated in this order involves a motion for sanctions against the government for possible violations of 26 U.S.C. § 7213.

Respondent has been preparing tax returns for the taxpayers since the mid-fifties. Customarily the taxpayers would drop off the ledger in the tax season between January and April, and would pick it up at some later time. The last time they delivered the ledger to the accountant was in 1971 in the tax season. The accountant has had it continuously in his possession since that time. The taxpayers did not continue their usual practice of picking the ledger up after the filing of the annual return because Mr. Pelski took a position as

Director of the South Florida insuring office of the Federal Housing Administration in 1970; consequently, they were required to place their assets in a blind trust in order to avoid a conflict-of-interest situation under the regulations of the Department of Housing and Urban Development. During this period of time the accountant received financial information from the trustee of the blind trust, a Pompano Beach bank.

At the time the taxpayers picked up their tax returns in 1973 they requested the return of the ledger but the accountant asked if he could retain it for a while as he wanted to make some additional entries. Mr. Pelski was no longer in government service, having resigned in late 1972.

The accountant testified that it was due to inadvertence that he had not returned the ledger to the taxpayers prior to being served with the government's summons; in fact, he had the ledger lying on his office couch, intending to deliver it to the taxpayers.

All parties agree that the accountant is a mere stakeholder and that the real dispute lies between the government and the taxpayers.

Both the government and the taxpayers rely on the recent Supreme Court decision in Couch v. United States, 409 U. S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973). The court requested a memorandum of law from the government and the taxpayers, and it was in the filing of the government's memorandum that the second and more troublesome matter arose. The court did not request that any evidentiary matter be attached to a memorandum of law; instead, the government followed the somewhat unusual procedure of gratuitiously attaching an exhibit to its memorandum of law. The exhibit was no ordinary exhibit: it was certified copies of the taxpayers' joint income tax returns for the last six years. Mr. Pelski has been the subject of considerable news media interest and, curiously enough, when the memorandum was filed representatives of the press were waiting for it in the Clerk's office. The returns were totally irrelevant to any issue raised by the *Couch* decision.

The exhibits stimulated a motion by intervenors for imposition of sanctions and/or abatement of investigation. The court set the intervenors' motion for hearing and directed counsel for all parties to file a brief on the question of whether "any claim of privilege exists to exempt the government attorneys from the operation of 26 U.S.C. § 7213." [1]

The government's memorandum in opposition to the motion for imposition of sanctions attempted to justify its cavalier attachment of the tax returns by asserting that the copies of the returns were admissible as a matter of right under the federal shopbook rule, 28 U.S.C. § 1732, and as a government record. 28 U.S.C. § 1733. Additionally, the government asserted that the exhibits are self-admitting under Rule 44 of the Federal Rules of Civil Procedure. The memorandum then completely misses the mark by asserting that the intervenors' motion has no basis because ". . . income tax returns are, as a matter of law, public records." At this point in time, that presumes an indictment for income tax violations—a prerogative of the grand jury, not the Department of Justice. One must wonder at the government's position if the grand jury

---

1. 26 U.S.C. § 7213. *Unauthorized disclosure of information*

(a) *Income returns.*—(1) *Federal employees and other persons.*—It shall be unlawful for any . . . employee of the United States to divulge or to make known in any manner whatever not provided by law to any person the amount or source of income, profits, losses, expenditures, or any particular thereof, set forth or disclosed in any income return, or to permit any income return or copy thereof . . . to be seen or examined by any person except as provided by law; . . . and any person committing an offense against the foregoing provision shall be guilty of a misdemeanor . . . and if the offender be an . . . employee of the United States he shall be . . . discharged from employment.

refused to indict intervenors—if it is even considering such action.

■ Although the government has barraged the court with a great many regulations from the Code of Federal Regulations in support of its position that the disclosure of the tax returns was authorized by law and thus outside the purview of 26 U.S.C. § 7213, the court finds only one section to be relevant: Regulation 301.6103(a)–1(h) entitled "Use of returns in litigation." The government would have the court believe that once tax returns are turned over to the Department of Justice for use in preparation for grand jury or trial proceedings, the Department of Justice may publicly disclose those returns in connection with any matter even peripherally or tenuously involved with the *future* prosecution. The court does not believe that § 7213 authorizes such a blanket exception. The court believes this conclusion is warranted by the purpose and intent of § 7213 and further finds support in part of 301.-6103(a)–1(h) itself:

> "If a return . . . is furnished pursuant to this paragraph, it *shall* be limited in use to the purpose for which it is furnished and is *under no condition* to be made public except to the extent that publicity *necessarily* results from such use." (emphasis added)

The court entered a further order requiring that the United States Attorney for this district, the chief of the criminal division in the U. S. Attorney's office, all of the assistant U. S. attorneys who had signed any pleadings and the named trial attorneys from the Tax Division of the Department of Justice and "any other attorney in the Department of Justice who authorized or participated in the disclosure of the income tax returns of the intervenors" be present to give testimony at the hearing.

The testimony of the attorneys for the government revealed that the United States Attorney's office was acting merely as a conduit for the filing of the pleadings from the Department of Justice and did not participate in any way in the decision to attach certified copies of the tax returns to the memorandum of law. In fact, the United States Attorney had personally removed himself from this investigation over two years ago and had specifically turned over the responsibility to the Department of Justice.

The responses of the attorneys for the Department of Justice revealed that they are totally confident that their procedure was correct, and that they have the right to make tax returns a matter of public record in any proceeding in which a tax claim of the United States is involved. In fact one attorney candidly admitted that the Department's interpretation of the regulations in the Code of Federal Regulations[2] would permit the United States to disclose the tax returns of any individual who happens also to be a party to the litigation. The court was hastily assured by this attorney that this, of course, would not be done in routine cases such as the Sovereign's foreclosing a mortgage which had been assigned to the Secretary of the Department of Housing and Urban Development.

The attorneys admitted that the subject of § 7213 and its proscription was never discussed at Justice and that, in determining whether to file the tax returns, the procedure of filing them with the court for an *in camera* inspection was never considered or discussed. Counsel for the government, however, candidly admitted that the tax returns for the six years were attached to the memorandum of law because of a fear on the part of the Department of Justice that the court would only permit them to have access to the portions of the ledger dealing with calendar years 1971 and 1972; whereas, in fact, the government really wanted to examine the entire ledger and felt the tax returns would justify their position. The government's position is untenable because it never asked for anything other than the

2.  26 C.F.R. § 301.6103(a) (1) et seq. (1973).

1971 and 1972 portions of the ledger, either in the summons or at the hearing. In addition, never did it serve a summons for the years prior to 1971 and move to amend its petition or serve any notice it was contending for a larger scope under the summons.

This court finds such conduct a shocking and high-handed treatment of taxpayers and a complete evasion of congressional purpose in 26 U.S.C. § 7213.

The court was advised that the Department of Justice has reviewed its procedures as a result of the court's order and Justice has concluded that its procedures were correct. Having been a government lawyer in the not very distant past, this court must conclude that the review in Justice amounts to a bureaucratic circling of the wagons.

## CONCLUSIONS OF LAW

### [Enforcement of Subpoena]

■ The government is entitled to the documents sought in its summons: "ledger book of William F. and Eva Pelski for all of their financial transactions and interests starting January 1, 1971 and ending December 31, 1972." The case is governed by the decision of Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973), although the shorter term of possession by the accountant in the instant case gives the intervenors a much stronger position than that of the taxpayer in *Couch*.

### [Motion for Imposition of Sanctions]

■ The purpose of § 7213 is set forth in United States v. Tucker, 316 F. Supp. 822 (D.Conn.1970): " 'to prevent wholesale revelation of confidential information to persons not determined to have a legitimate interest therein.' Tollefsen v. Phillips, 16 F.R.D. 348, 349 (D.Mass.1954); Kingsley v. Delaware, Lackawanna & Western R. Co., 20 F.R. D. 156, 159 (S.D.N.Y.1957). It also serves to encourage the full and accurate reporting of income for tax purposes." Id. at 825.

No justification whatsoever for the attachment of the individuals' tax returns to a memorandum of law appears from a review of the memorandum, or the transcript of the prior proceedings, and the government has failed to show any justification either by the briefs subsequently filed or at the hearing.

It is not appropriate to grant the extreme sanction sought by taxpayers of abatement of the investigation of the government's inquiry into possible tax violations of the intervenors. However, they are entitled to some relief—if only to deter the overly zealous attorney in the Department of Justice from disclosing other taxpayers' returns in such high-handed fashion. Nothing the court can do can restore the privacy Congress intended these taxpayers to enjoy. The publication of data from the returns in local newspapers cannot be undone.

Section 7213 does provide criminal penalties against government employees who make an improper disclosure of tax returns. So the court will impose this limited sanction against the government: the ledger for 1971 and 1972 will be turned over to the government as soon as a grand jury has investigated this matter and either returned an indictment or a "no true bill" against the government officials involved in the disclosure. The court recognizes that responsibility for prosecuting crimes lies within the Executive Branch. United States v. Cox, 342 F.2d 167 (5th Cir. 1965); also see United States v. Ammidown, 14 Cr.L. 2189 (D.C.Cir.1973). Consequently, if the Attorney General declines to present this matter vigorously before a grand jury but adequately explains such action to the court, then the court will permit the government at that time to have the ledger for 1971 and 1972 for use in its investigation ■

The court will retain jurisdiction and enter a separate order effecting these findings of fact and conclusions of law.