TROUTT BROTHERS, INC. d/b/a The Jonesboro Sun,
John Troutt, Jr. and Larry Fugate *v.* Larry EMISON,
Sheriff of Craighead County and T.R. "Dickie" Howell, His
Chief Deputy

92-522 841 S.W.2d 604

Supreme Court of Arkansas
Opinion delivered November 9, 1992

*Penix, Penix & Lusby*, by: *Bill Penix* and *Robin Nix*, for
appellants.

*Henry, Walden, Davis & Halsey*, by: *Mike Walden*, for
appellees.

ROBERT H. DUDLEY, Justice. This appeal requires us to

construe the Freedom of Information Act, Ark. Code Ann. §§ 25-19-101—108 (Repl. 1992). Two sixteen-year-old girls and one fifteen-year old girl were arrested in Mississippi County. One was arrested for stabbing a victim to death, another for carrying a deadly weapon, and the third for felony theft. After their arrests, the three were transported to the Craighead County Juvenile Detention Center, a regional facility. Under the governing statutes, the two sixteen-year-old girls could have been charged as adults, Ark. Code Ann. § 9-27-318 (Repl. 1991), and treated as adults, or they could have been charged as juveniles and would have remained in the juvenile detention facility until the juvenile division of the chancery court ordered otherwise. See Ark. Code Ann. §§ 9-27-326, 327 (Repl. 1991) & § 9-28-209 (Supp. 1991). If the fifteen-year-old were the one arrested for stabbing her victim to death she too might have been charged as an adult, see Ark. Code Ann. § 9-27-318(b)(1) (Repl. 1991), or she might have been charged as a delinquent juvenile offender. See Ark. Code Ann. § 9-27-303(11) (Repl. 1991). The salient fact is that none of the juveniles had been charged in the juvenile division of chancery court at the time the issue in this case arose, and, therefore, no juvenile proceedings had been commenced. Ark. Code Ann. § 9-27-310 (Repl. 1991). Subsequent testimony showed that both of the sixteen-year-old girls were later charged as adults in circuit court, one being charged with capital murder, and the other being charged in connection with another homicide. The fifteen-year-old was charged as a delinquent juvenile.

While in the regional juvenile facility, the three detainees attacked a matron, broke several of her ribs while overpowering her, took the keys to the facility and to her car, got out of the facility with one of the keys, and, with the use of the other key, escaped in her car. Newsroom employees of the *Jonesboro Sun* heard the police broadcasts of the escape through use of a radio scanner. Larry Fugate, the managing editor of the *Sun*, immediately went to the facility to ask what had happened. The Craighead County Juvenile Detention Facility is located in the same building as the Craighead County Jail, or adult jail, but the two facilities are separate. They have separate entrances, separate facilities, separate records, separate personnel, and separate standards. Upon arriving at the building Fugate asked Dickie Howell, Chief Deputy Sheriff of Craighead County, for the

names of the escapees. The deputy sheriff responded that he understood the law to be that the names of juvenile offenders were not to be released and, accordingly, did not divulge the girls' names. Later, he refused to allow Fugate to see the logs and booking sheets on the girls. The *Sun* filed suit in circuit court against Sheriff Larry Emison and Deputy Dickie Howell asking that the names and records be made public information. The trial court examined applicable statutes, considered the possibility that the General Assembly did not word one of statutes as it intended, and, in this case of first impression, concluded that the public policy in favor of keeping juveniles' names confidential outweighed the public policy represented by the Freedom of Information Act. Accordingly, the trial court found no violation of the Freedom of Information Act. We reverse, primarily because the legislative branch rather than the judicial branch can create exceptions to the act, and the legislature has not created an exception specifically applicable to this set of facts.

The Arkansas Freedom of Information Act provides in pertinent part:

Except as otherwise *specifically provided by this section or by laws specifically enacted to provide otherwise,* all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

Ark. Code Ann. § 25-19-105(a) (Repl. 1992) (emphasis added). This language provides that only the General Assembly can create exceptions to the FOIA. We have followed this directive and have required that a statute *specifically* provide for nondisclosure before we will exempt a public record from the act. *See Legislative Joint Auditing Comm.* v. *Woosley,* 291 Ark. 89, 722 S.W.2d 581 (1987). Therefore, the issue is whether there is a statute that specifically provides for the exemption of the names of juveniles arrested for felonies, but not charged as delinquent juveniles, and whether detention facility logs and booking sheets of juvenile detention facilities are exempt.

Deputy Sheriff Howell obviously thought that a part of the juvenile code, Ark. Code Ann. § 9-27-348 (Repl. 1991), provided for the exemption. However, the language of that exemption is as follows:

> No information whereby the name or identity of a juvenile *who is the subject of proceedings under this subchapter* may be ascertained shall be published by the news media *without written order of the juvenile court.* [Emphasis supplied.]

Another statute, Ark. Code Ann. § 9-27-310(a) (Repl. 1991), provides that juvenile "[p]roceedings shall be commenced by filing a petition with the clerk of the chancery court or by transfer by another court." Thus, these juveniles were not "the subject of proceedings," and the exemption does not specifically apply. This construction of the statute is confirmed by the phrase "without written order of the juvenile court," which clearly means that the exemption is to apply only to cases filed in the juvenile court.

One might argue that our construction of these statutes defeats, to some extent, the public policy of shielding juvenile offenders since our construction leaves a window of time, between the arrest and the charge, in which the name of a delinquent juvenile can be discovered. However, that result is in accordance with the language of the statute. If it is to be changed, it should be changed by the General Assembly and not by this court. If the General Assembly wants to declare the public policy to be that the names of all juvenile offenders are exempt public records, whether the juvenile is charged, or if charged, whether charged in juvenile court or in circuit court, it knows how to do so.

However, the General Assembly might not choose to create such a blanket exemption. One of these cases is a good example. There was testimony that the juvenile, who was charged as an adult with the crime of capital murder, stabbed her victim twenty-two times, then attacked the matron, escaped, and was loose in public. The General Assembly might well think that, for its safety, the public had a right to know the name or see a picture of such a dangerous escapee. But again, that is not for this court to decide. Our long standing position is clear. FOIA exemptions are to be narrowly construed, *Hengel* v. *City of Pine Bluff*, 307 Ark. 457, 821 S.W.2d 761 (1991), and when the legislature "is less than clear in its intendments, then privacy must yield to openness and secrecy to the public's right to know." *Ragland* v. *Yeargan*, 288 Ark. 81, 86, 702 S.W.2d 23, 25 (1986). Accordingly, we hold that this statute does not provide an exemption to FOIA.

Appellees also contend that two federal statutes provide for nondisclosure in these cases. The statutes, 42 U.S.C. §§ 5676 and 5731 (1988) are a part of the federal program for assisting states with their juvenile justice systems. Under the federal program the states submit plans to the Office of Juvenile Justice and Delinquency Prevention in order to receive grant money. 42 U.S.C. § 5633 (1988). If the states do not comply with the federal program they will not receive grant money. The first of the statutes, 42 U.S.C. § 5676, provides:

> Except as authorized by law, program records containing the identity of individual juveniles gathered for purposes pursuant to this subchapter may not be disclosed without the consent of the service recipient or legally authorized representative, or as may be necessary to carry out this subchapter. Under no circumstances may program reports or findings available for public dissemination contain the actual names of individual service recipients.

The first sentence above protects "program records." Here, the citizen asked the public official for the names of the girls before they were charged in any court. At that time their names were not part of the juvenile program records. In fact, two of the names never became part of the juvenile program records. Accordingly, we cannot say that this provision *specifically* provides for exemption. The same reasoning applies to the second sentence which prohibits printing the names of juveniles in "program reports or findings available for public dissemination."

The second of the federal statutes advanced by the appellees as proving an exception is 42 U.S.C. § 5731. However, that statute is a part of the subchapter entitled "Runaway and Homeless Youth" and is simply not applicable to the case at bar.

The cited federal statutes are not laws "specifically enacted" to countermand the Arkansas FOIA's general rule that public records must be available, and we hold that they do not provide an exemption. We are aware that this holding may make it more difficult for the State to receive federal funding for its juvenile justice program. One authority has written on the subject. *See* Watkins, *The Freedom of Information Act: Time For A Change*, 44 Ark. L. Rev. 535 (1991). But again, if a change in the state act is to be made, it must be made by the legislature.

Until it is changed we hold that a federal law which does not prohibit disclosure, but only provides for the loss of funds if the information is disclosed, does not supersede the state FOIA. *Accord, Student Bar Assoc.* v. *Byrd,* 239 S.E.2d 415 (N.C. 1977).

Reversed and remanded for proceedings consistent with this opinion.

CORBIN, J., dissents.

DONALD L. CORBIN, Justice, dissenting. The majority directs the reader's attention to the Arkansas Freedom of Information Act, Ark. Code Ann. §§ 25-19-101 to -107 (Repl. 1991), which provides in pertinent part:

> Except as otherwise *specifically provided by this section or by laws specifically enacted to provide otherwise,* all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

Ark. Code Ann. § 25-19-105(a) (Repl. 1992) (emphasis added).

This court, very laudably, has followed the basic precept that the objectives of the FOIA are such that whenever the legislature fails to specify that any records in the public domain are to be excluded from inspection, then privacy must yield to openness. *Ragland* v. *Yeargan,* 288 Ark. 81, 702 S.W.2d 23 (1986). We have with lock-step precision consistently affirmed the view that the FOIA should be interpreted broadly and exceptions narrowly in order to counterbalance the self-protecting interests of governmental bureaucracy. *McCambridge* v. *City of Little Rock,* 298 Ark. 219, 766 S.W.2d 909 (1989). This is as it should be in order to safeguard the citizens rights to openness of government.

The Arkansas Juvenile Code of 1989 provides that "[a]ll records may be closed and confidential within the discretion of the court." Ark. Code Ann. § 9-27-309(a) (Repl. 1991). The Juvenile Code further provides that "[n]o information whereby the name or identity of a juvenile who is the subject of proceedings under this subchapter may be ascertained shall be published by the news media without written order of the juvenile court." Ark. Code Ann. § 9-27-348 (Repl. 1991). I read these two provisions to

encompass the FOIA.

The majority notes that Ark. Code Ann. § 9-27-310(a) (1987) states that proceedings are commenced with the filing of a petition and that since no petition had been filed these juveniles were not subject to the discretion of the court. I do not believe the legislature intended this statement to be a definition of "proceedings" as used in section 9-27-348. Such an interpretation would result in a situation where the records of any juvenile being held in a juvenile detention center could be released just because the juvenile justice system had not yet permitted a petition to be filed. What an absurd result — it would render the policy of protecting juveniles' identity absolutely meaningless. Thus, the majority holds today that it makes no difference that while a juvenile is held in a juvenile detention center awaiting charges on a matter that could possibly come before the juvenile court, his or her identity and any records relating thereto are subject to publication by the media without the prior approval of the juvenile court. This is so simply because the authorities have not yet filed a petition to trigger the "proceedings."

There is an additional reason for affirming this case and that is the fact that these juveniles were being held in a federally funded juvenile facility which is housed in the same facility as the Craighead County Jail. The means to hold these juveniles in a regional juvenile facility were provided by our federal government. In order to receive federal funds, this regional juvenile detention center was subject to the following provision of Juvenile Justice Detention and Prevention Act (JJDPA):

> Except as authorized by law, program records containing the identity of individual juveniles gathered for purposes pursuant to this title [ 42 U.S.C. §§ 5601 *et. seq.*] may not be disclosed without the consent of the service recipient or legally authorized representative, or as may be necessary to carry out this title. *Under no circumstances may program reports or findings available for public dissemination contain the actual names of individual service recipients.*

42 U.S.C. § 5676 (emphasis added).

The majority opinion places in jeopardy not only the juvenile

detention center in Craighead County, but also any other juvenile facility in our state·in which is federally funded and faced with a request similar to the one made in this case. The majority opinion thus forces our juvenile facilities to make a Hobson's choice—a choice of violating the Juvenile Code with its policy of protecting juveniles' identities or violating the JJDPA and losing federal funding. This is the point at which the precision of the majority loses touch with reality by opining that the Juvenile Code and the federal act in question are not applicable as exceptions to the FOIA. I fail to see that our legislature acted irresponsibly in this respect.

This court has faced conflicting public policies courageously in times past. Today's decision impairs, even more so than previous decisions, the concept of a juvenile system of justice; a concept which was approved as a Constitutional Amendment, after the passage of the FOIA, and for which a whole tier of new judges was authorized and funded (who may not have anything to do if this court continues to chip away the Juvenile Code). Today's decision is a significant chip at the Juvenile Code because it not only threatens the regional juvenile facility in question, but also threatens any other juvenile facilities who have received federal funding under the JJDPA. Our juvenile facilities may now find their funds cut off because of today's requirement of disclosure of the names of juveniles who are being held in a federally funded juvenile detention center while awaiting the filing of formal charges.

Sometimes, we create more problems than we solve. Fortunately, the legislature is set to go into session, otherwise the decision today would be a disaster.