ARKANSAS DEPARTMENT OF HEALTH,
Sandra B. Nichols, M.D., Director, and
Henry C. Robinson, Jr., Director and State Registrar, Division
of Vital Records *v.* WESTARK CHRISTIAN ACTION
COUNCIL, a Nonprofit Corporation

94-1264                                                910 S.W.2d 199

Supreme Court of Arkansas
Opinion delivered November 13, 1995

*George A. Harper*, Gen. Counsel, Arkansas Department of Health, for appellants.

*R. Gunner DeLay*, for appellee.

*Bettina E. Brownstein, Eve C. Gartner*, and *Dara Klassel*, for William Harrison, M.D., Planned Parenthood of Eastern Oklahoma and Western Arkansas, Inc., Planned Parenthood of Greater Arkansas, Inc., Curtis E. Stover, M.D., and Little Rock Family Planning Services, P.A., as *amici curiae* in support of appellants.

*Simons & Assoc.*, by: *L. Vance Marker*, attorney, and *Penny Shane, Emily Granrud*, and *Ellen Nachtigall*, of counsel, for the American College of Obstetricians and Gynecologists, the American Medical Women's Ass'n, the American Public Health Ass'n, the Ass'n for Vital Records and Health Statistics, the Committee on Privacy and Confidentiality of the American Statistical

Ass'n, and the Society of General Internal Medicine, as *amici curiae* in support of appellants.

*J. Fred Hart, Jr.,* and *Charles Suphan,* for Prolife Arkansas, as *amicus curiae* in support of appellees.

ROBERT L. BROWN, Justice. The issue in this appeal is whether certain reports of aborted pregnancies are either "medical records" or "vital records" and, thus, exempt from the requirements of the Arkansas Freedom of Information Act (FOIA), which is codified at Ark. Code Ann. § 25-19-101 to 107 (Repl. 1992, Supp. 1993). Appellants Arkansas Department of Health; Sandra B. Nichols, Director; and Henry C. Robinson, Director and State Registrar of the Division of Vital Records (jointly referred to as Health Department) appeal from a judgment of the circuit court ordering the release of these reports to appellee Westark Christian Action Council. We conclude that the court erred in finding that the reports were not vital records and exempt from the FOIA. We reverse and remand.

On July 1, 1994, Dale W. Morfey, Chairman and President of Westark, requested copies of aborted pregnancy reports and files under the FOIA for Washington, Crawford, and Sebastian Counties from 1980 to present or, alternatively, access to the files containing this information. The precise request was for copies of Form ACHS-01 for these counties for that time frame, which is a form entitled a "Report of Induced Termination of Pregnancy." Form ACHS-01 is filed with the Health Department's Center for Health Statistics "for statistical use only." The data required in the form is the facility name and address where the induced termination occurs and the following information about the patient: age; marital status; date of pregnancy termination; address by city, county, state and zip code; residence inside the city limits; race; education level; previous pregnancies; date of last menses; and type of procedure used in the termination.

On July 6, 1994, the General Counsel for the Health Department responded and stated that the Division of Vital Records had interpreted Form ACHS-01 to be a "vital record" and not subject to release under the Vital Statistics Act. On July 28, 1994, Westark filed suit under the FOIA and alleged that the reports requested were not "vital records" but statistical reports and that their release would constitute no breach of confidentiality. Wes-

tark contended that the Health Department had violated the FOIA. The Health Department answered and denied the allegations in the complaint. It filed a Trial Brief, asserting that Form ACHS-01 was not only a "vital record" under the Vital Statistics Act, codified at Ark. Code Ann. § 20-18-101 to 705 (Repl. 1991), but also a "medical record" and exempt under the FOIA at Ark. Code Ann. § 25-19-105(b)(2) (Repl. 1992).

On August 18, 1994, following a hearing on the matter, the circuit court found that Form ACHS-01 was neither a "vital record" nor a "medical report." The court ordered disclosure of the reports requested by Westark pursuant to the FOIA but stayed its order pending appeal.

■■ The dual arguments advanced by the Health Department on appeal are that Form ACHS-01 is both a "medical record" and a "vital record" and, thus, exempt from the FOIA under either exemption. We begin by referencing the policy considerations surrounding the FOIA and our rules of construction regarding it. The FOIA opens "all public records" for public inspection. Ark. Code Ann. § 25-19-105(a) (Supp. 1993). The term "public records" is defined to include all documents required by law to be kept and which record the performance or lack of performance of official functions. Ark. Code Ann. § 25-19-103(1) (Repl. 1992). We liberally construe the FOIA to accomplish its broad and laudable purpose that public business be performed in an open and public manner. *Sebastian County Chap. of the Am. Red Cross* v. *Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993); *Bryant* v. *Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992). In conjunction with this rule of construction, we narrowly construe exceptions to the FOIA to counterbalance the self-protective instincts of the government bureaucracy. *Byrne* v. *Eagle*, 319 Ark. 587, 892 S.W.2d 487 (1995); *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). A statutory provision for nondisclosure must be specific. Ark. Code Ann. § 25-19-105(a) (Supp. 1993); *Troutt Bros.* v. *Emison*, 311 Ark. 27, 841 S.W.2d 604 (1992). Less than clear or ambiguous exemptions will be interpreted in a manner favoring disclosure. *Troutt Bros.* v. *Emison, supra; Young* v. *Rice*, 308 Ark. 593, 826 S.W.2d 252 (1992).

Bearing these principles in mind, we address the issue of whether Form ACHS-01 is a "vital record" and, if so, whether it

is exempt from the FOIA. The Vital Statistics Act, as it existed in 1994, provided these definitions which are pertinent to this appeal:

(1) "Vital statistics" means the data derived from certificates and reports of birth, death, fetal death, induced termination of pregnancy, marriage, divorce, or annulment and related reports but does not mean or include the unintentional destruction of a fetus in performance of the surgical procedure dilation and curettage;

. . . .

(3) "Vital records" means certificates or reports of birth, death, marriage, divorce, or annulment and the data related thereto;

. . . .

(7) "Fetal death" means death prior to the complete expulsion or extraction from its mother of a product of human conception, irrespective of the duration of pregnancy. The death is indicated by the fact that after the expulsion or extraction, the fetus does not breathe or show any other evidence of life such as beating of the heart, pulsation of the umbilical cord or definite movement of voluntary muscles;

(A) "Spontaneous fetal death" means the expulsion or extraction of a product of human conception resulting in other than a live birth and which is not an induced termination of pregnancy, sometimes referred to as stillbirth and miscarriage;

(B) "Induced termination of pregnancy" means the intentional termination of pregnancy with the intention other than to produce a live-born infant or to remove a dead fetus;

Ark. Code Ann. § 20-18-102(1), (3), (7) (Repl. 1991).

The Act, in 1994, further prohibited disclosure of "vital records":

(a) To protect the integrity of vital records, to insure their proper use, and to insure the efficient and proper

administration of the system of vital statistics, it shall be unlawful for any person to permit inspection of or to disclose information contained in vital records or to copy or issue a copy of all or part of any record except as authorized by this chapter and by regulation or by order of a court of competent jurisdiction. The regulations shall provide for adequate standards of security and confidentiality of vital records.

(b) The board may authorize by regulation the disclosure of information contained in vital records for research purposes.

(c) The state registrar shall not permit searching of the files and records of the division by any person other than by the authorized employees of the division and shall not furnish lists of births or deaths for commercial purposes.

Ark. Code Ann. § 20-18-304 (Repl. 1991).

The Act, thus, provides under § 20-18-102(7) that induced terminations of pregnancies are embraced within the definition of "fetal death." The Act at § 20-18-102(3) also provides that "vital records" are reports of "death" and "the data related thereto." Westark argues, however, that reports on fetal death are not specifically listed under § 20-18-102(3) as vital records while fetal death is mentioned in § 20-18-102(1) and § 20-18-102(7). This, according to Westark's theory, substantiates a legislative intent to exclude Form ACHS-01 reports as "vital reports." That contention, however, ignores the fact that a broader, more encompassing category is referenced under § 20-18-102(3) — death — which subsumes the subcategory of "fetal death." We have addressed comparable arguments in other contexts. For example, it has been urged upon us on occasion that the term "robbery" does not include "aggravated robbery" for purposes of capital felony murder. We have dismissed that argument as having no merit. *See Nooner* v. *State*, 322 Ark. 87, 907 S.W.2d 677 (1995); *McClendon* v. *State*, 295 Ark. 303, 748 S.W.2d 641 (1988).

On an analogous point, Westark urges that Form ACHS-01 is a form for collecting data and statistics and as such is not a vital report. We give this argument little credence. The definition of "vital records" set forth at § 20-18-102(3) includes

reports on *death* and *the data related thereto*. Under the clear terms of the statute, as already stated, "induced termination of pregnancy" is a subset of "fetal death" and data relating to death reports constitutes a "vital record." We conclude that Form ACHS-01 provides that data and easily qualifies as a vital record under the Vital Statistics Act.

We are mindful of the fact that the Vital Statistics Act does provide that reports on fetal deaths involving more than 20 weeks of gestation are made to the Division of Vital Records whereas reports on fetal deaths resulting from induced terminations of pregnancies are filed with the Division of Health Statistics. Ark. Code Ann. § 20-18-603 (Repl. 1991). We also are aware that under § 20-18-603 these statistical reports are not made part of the permanent records of the system of vital statistics. But contrary to the assertion by Westark, we do not view § 20-18-603 as undermining our conclusion that Form ACHS-01 is a vital record. This section merely describes where the report is to be filed and its lack of permanency. Regardless of its eventual location, Form ACHS-01 provides data relating to a category of death and is included within the definition of "vital records."

Moreover, the Vital Statistics Act evinces a clear and specific policy in favor of the confidentiality of the Form ACHS-01 reports. That policy is evidenced by the general provision which expressly renders disclosure of "vital records" unlawful under § 20-18-304. It is further evidenced by § 20-18-603(b)(3), which requires that reports of fetal deaths "not include the name or other personal identification of the individual having an induced termination of pregnancy." To underscore this policy even further, the General Assembly enacted Act 1254 of 1995, which amends the Vital Statistics Act to include a category of statistics entitled "vital reports." Under the new Act, "vital reports" are defined as "reports of fetal death and induced terminations of pregnancy and data related thereto," and disclosure of "vital reports" is expressly proscribed. Act 1254 also defines "fetal death" and "induced termination of pregnancy" separately. We do not give retroactive effect to this legislative enactment. By the same token, the most basic rule of statutory construction is to give effect to the intent of the General Assembly. *Graham* v. *Forrest City Housing Auth.*, 304 Ark. 632, 803 S.W.2d 923 (1991). While we view the Vital Statistics Act, as it existed in 1994, to be clear and

unambiguous on the issue of whether Form ACHS-01 constituted a vital record and was nondisclosable, the enactment of Act 1254 confirms the manifest intent of the General Assembly to render unlawful the release of this data. *See Nathaniel* v. *Forrest City School Dist. No. 7*, 300 Ark. 513, 780 S.W.2d 539 (1989).

Finally, though the circuit court did couch its order in terms of "finding" that Form ACHS-01 was not a "vital record," we do not consider that to be a finding of fact which would bring into play the clearly erroneous standard of review. *See* Ark. R. Civ. P. 52(a). This case presents issues of statutory construction — what is included within the term "vital records" and whether the data is subject to disclosure — and it is for this court to decide what a statute means. *See Peters* v. *State*, 321 Ark. 276, 902 S.W.2d 757 (1995); *Furman* v. *Holloway*, 312 Ark. 378, 849 S.W.2d 520 (1993); *Bryant* v. *Mars, supra.*

Because we decide that Form ACHS-01 is a vital record within the confines of the Vital Statistics Act and exempt from the FOIA, we need not address whether it is also a "medical record." We reverse the order of the circuit court and remand the case for purposes of entry of an order consistent with this opinion.

Reversed and remanded.

NEWBERN, J., not participating.

Special Justice JESSE L. KEARNEY concurs.

ADDENDUM

ARKANSAS DEPARTMENT OF HEALTH
CENTER FOR HEALTH STATISTICS
REPORT OF INDUCED TERMINATION OF PREGNANCY
(FOR STATISTICAL USE ONLY)

| 1. FACILITY NAME (If not clinic or hospital, give address) | 2. CITY, TOWN, OR LOCATION OF PREGNANCY TERMINATION | 3. NAME OF STAFF COMPLETING REPORT PHONE # _____ |
|---|---|---|

| 4. COUNTY OF PREGNANCY TERMINATION | 5. AGE LAST BIRTHDAY | 6. MARRIED? [ ] YES [ ] NO | 7. DATE OF PREGNANCY TERMINATION (Month, Day, Year) |
|---|---|---|---|

| 8a. RESIDENCE - STATE | 8b. COUNTY | 8c. CITY, TOWN, OR LOCATION | 8d. INSIDE CITY LIMITS? [ ] YES [ ] NO | 8e. ZIP CODE |
|---|---|---|---|---|

| 9. OF HISPANIC ORIGIN? (Specify No or Yes - If Yes, specify Cuban, Mexican, Puerto Rican, etc.) [ ] No [ ] Yes Specify: | 10. RACE 1. [ ] White 2. [ ] Black 3. [ ] American Indian 4. [ ] Other (Specify) _____ | 11. EDUCATION (Specify only highest grade completed) Elementary/Secondary (0-12) / College (1-4 or 5+) |
|---|---|---|

| 12. DATE LAST NORMAL MENSES BEGAN (Month, Day, Year) | 13. CLINICAL ESTIMATE OF GESTATION (Weeks) | 14. PREVIOUS PREGNANCIES (Complete each section) |||||
|---|---|---|---|---|---|

| | | LIVE BIRTHS || OTHER TERMINATIONS ||
|---|---|---|---|---|---|
| | | 14a. Now Living Number ____ [ ] None | 14b. Now Dead Number ____ [ ] None | 14c. Spontaneous Number ____ [ ] None | 14d. Induced (Do not include this termination) Number ____ [ ] None |

15. TERMINATION PROCEDURES

| 15a. PROCEDURE THAT TERMINATED PREGNANCY (Check only one) | TYPE OF TERMINATION PROCEDURES | 15b. ADDITIONAL PROCEDURES USED FOR THIS TERMINATION, IF ANY (Check all that apply) |
|---|---|---|
| [ ] | Suction Curettage | [ ] |
| [ ] | Sharp Curettage | [ ] |
| [ ] | Dilation and Evacuation (D&E) | [ ] |
| [ ] | Intra-Uterine Saline Installation | [ ] |
| [ ] | Intra-Uterine Prostaglandin Installation | [ ] |
| [ ] | Hysterotomy | [ ] |
| [ ] | Hysterectomy | [ ] |
| [ ] | Other (Specify) _____ | [ ] |

MAIL TO:  ARKANSAS DEPARTMENT OF HEALTH
CENTER FOR HEALTH STATISTICS
4815 WEST MARKHAM STREET SLOT 19
LITTLE ROCK, AR 72205-3867

ACHS-01          TELEPHONE: (501) 661-2368

JESSE L. KEARNEY, Special Associate Justice, concurring. This case raises the issue whether certain information, obtained by the Vital Records Division of the Department of Health, by means of mandatory reports, pursuant to Ark. Code Ann. § 20-18-302, from doctors, hospitals and other health care providers, is open to inspection by the public at large pursuant to the Freedom of Information Act, Ark. Code Ann. § 25-19-101, *et seq.*

The Freedom of Information Act establishes the broad policy that all government records are open to the public. This legislation creates a presumption that as to any information maintained by any government officer, agent or institution, the public, under certain procedural guidelines, is entitled to access to such information. However, there are certain exceptions to the broad policy of open access, and the presumption of open access can be rebutted by showing that the information sought fits into one of those exceptions, Ark. Code Ann. § 25-19-105(b).

These exceptions can be grouped into two broad categories:

[a] those items of information specifically exempt from access by the language of the FOIA itself, [Ark. Code Ann. § 25-19-105(b)(1)–(9)], and

[b] those items of information which are recognizable under the FOIA as exempt from open access by the terms of other statutes [Ark. Code Ann. § 25-19-105(b)(10)]; for instance 20-18-304, et seq. The first category, those exempt by the language of the FOIA, are narrowly construed in order to counterbalance the tendency of bureaucracies for secrecy, and to give liberal interpretation to the broad policy for open access; the exemptions specifically set out in the FOIA are as follows:

"Ark. Code Ann. § 25-19-105 . . .

(b) It is the specific intent of this section that the following records shall not be deemed to be made open to the public by the provisions of this chapter:

(1) State income tax returns;

(2) Medical, scholastic, and adoption records;

(3) The site files and records maintained by the Arkansas Historic Preservation Program and the Arkansas Archeological Survey;

(4) Grand jury minutes;

(5) Unpublished drafts of judicial or quasi-judicial opinions and decisions;

(6) Undisclosed investigations by law enforcement agencies of suspected criminal activity;

(7) Unpublished memoranda, working papers, and correspondence of the Governor, legislators, Supreme Court Justices, and the Attorney General;

(8) Documents which are protected from disclosure by order or rule of court;

(9) Files which, if disclosed, would give advantage to competitors or bidders."

If the information sought by Plaintiffs fits into one of these exemptions, then it seems that no further inquiry is necessary, as the very act under which the Plaintiff brings this action, forecloses the relief sought. The Defendants/Appellants in this action, Arkansas Dept. of Health, et al., assert that the information sought is exempt as fitting into item (b)(2) in the category above, as well as fitting in the second broad category.

The second category of exemptions, those items of information recognized by the FOIA, as exempt from open access by the language of other statutes, must be strictly construed, and must be specific. Ark. Code Ann. § 25-19-105(b)(10) (Supp. 1993); *Troutt Bros.* vs. *Emison,* 311 Ark. 27, 841 S .W. 2d 604 ( 1992 ) . Less than clear, or ambiguous exemptions will be interpreted in a manner favoring disclosure. *Troutt Bros., supra; Young* v. *Rice,* 308 Ark. 593, 826 S.W. 2d 252 (1992).

I believe resort to a determination if the information sought fits this category of exemptions should occur only if such information does not fit into the former category.

Following this approach, and applying it to the fact and law presented in this case, we should decide if the information sought by Plaintiffs is exempt from disclosure.

On July 1, 1994, Dale W. Morfey, Chairman and President of Westark, requested copies of Aborted Pregnancy reports and files under the FOIA for Washington, Crawford, and Sebastian Counties from 1980 to present or, alternatively, access to the files containing this information. The precise request was for copies of Form ACHS-01 for these counties for that time frame, which is a form entitled a "Report of Induced Termination of Pregnancy." Completion of Form ACHS-01 is mandatory under Ark. Code Ann. § 20-18-302 and 303, and is filed with the Health

Department's Center for Health Statistics "for statistical use only." The data required in the form is the *facility* name, *address* where the induced termination occurs and the following *information about the patient*: age; marital status; date of pregnancy termination; address by city, county, state and zip code; residence inside the city limits; race; education level; previous pregnancies; date of last menses; and type of procedure used in the termination.

All the information requested is of the nature that would be available to the clinic, hospital or informer, only as a medical provider, gathered in the course of and for purposes of treatment, diagnosis, examination of a patient.

On July 6, 1994, the General Counsel for the Health Department responded and stated that the Division of Vital Records had interpreted Form ACHS-01 to be "vital records" and prohibited from release under the terms of the Vital Statistics Act. On July 28, 1994, Westark filed suit under the FOIA and alleged that the reports requested were not "vital records" but statistical reports and that their release would constitute no breach of confidentiality. Westark contended that the Health Department had violated the FOIA. The Health Department answered and denied the allegations in the complaint. It filed a Trial Brief, asserting that Form ACHS-01 was not only a "vital record" under the Vital Statistics Act, codified at Ark. Code Ann. § 20-18-101 to 705 (Repl. 1991), but also a "medical record" and exempt under the FOIA at Ark. Code Ann. § 25-19-105(b)(2) (Repl. 1992).

On August 18, 1994, following a hearing on the matter, the circuit court found that Form ACHS-01 was neither a "vital record" nor a "medical report." The court ordered disclosure of the reports requested by Westark pursuant to the FOIA.

The dual arguments advanced by the Health Department on appeal are that Form ACHS-01 is both a "medical record" as referred to in the FOIA, and thus not subject to disclosure under the act, and a "vital record" as defined in the Vital Statistics Act, prohibited from disclosure under the Vital Statistics Act.

As stated earlier, if the ACHS-01 is a medical record as asserted by the Defendant, then we need not look further for a resolution to this appeal.

The FOIA makes medical records exempt from public access, but does not define a medical record. Ark. Code Ann. § 25-19-105(b)(2). To resolve the first step analysis of the existence of an exemption to disclosure, we must, therefore, resort to a definition found in other parts of the State's law, or ourselves fashion a definition of a medical record.

In the Arkansas Rules of Evidence we find that this court, in adopting or passing the uniform rules, has previously defined the term "medical record" as follows: "a medical record is any *writing*, document, or electronically stored *information pertaining to, or, created as a result of*, treatment, diagnosis or examination of a patient." A.R.E. Rule 503(a)(5).

In that same evidence rule, a *patient* is defined as "a person who consults, or is examined, or is interviewed by a physician. . ." A.R.E. Rule 503(a)(1); a physician is defined as "a person authorized to practice medicine in any state or nation, or reasonably believed by the patient to be so." A.R.E. Rule 503(a)(2).

The information contained in Form ACHS-01 is transmitted to the Department of Health by a physician (or his clinic or hospital), is a writing, and is information pertaining to *and* is *created* as a result of treatment, diagnosis or examination of a patient. A.R.E. Rule 503(a)(5). It seems clear, therefore, that such information is a medical record, regardless of its intended use, and regardless of the fact the information is compiled in a certain fashion for use by the Department. Such information is available because the person providing the information acted as the *physician* for the person who is the subject of the information.

I would therefore find that the ACHS-01 is a medical record, and is therefore exempt from disclosure by the language of the FOIA itself. Ark. Code Ann. § 25-19-105(b)(2).

Insofar as the majority opinion finds that the document sought by the Plaintiffs is also a Vital Record under the provisions of the Vital Records Act, and therefore exempt under that act, I concur. Therefore, even if the court did not determine whether the ACHS-01 is a medical record, the document should not be disclosed, because disclosure is prohibited under the Vital Statistics Act. Ark. Code Ann. § 20-18-101 to 705 (Repl. 1991).