Beverly Masters, Maumelle City Clerk 550 Edgewood Drive, Suite 590 Maumelle, AR 72113
Dear Ms. Masters:
I am writing in response to your request for my opinion regarding the application of the Arkansas Freedom of Information Act ("FOIA"), A.C.A.25-19-101 et seq. (Repl. 1996 Supp. 2001). You have submitted your requests pursuant to A.C.A. 25-19-105(c)(3)(B), which authorizes the custodian, requester, or subject of personnel or evaluation records to seek an opinion from the Attorney General as to whether certain public records are subject to disclosure under the FOIA.
Specifically, you report that the Maumelle Monitor has submitted to you a request for certain records relating to the recent termination of David Shewmaker from his position as Maumelle Planning and Zoning Director. You have attached the records to your request for my review. You have also attached correspondence from you to the editor of the Maumelle Monitor
advising him that you "do not believe that there is a public interest sufficiently compelling to warrant disclosure at this time."
In Arkansas Gazette Co. v. Southern State College, 273 Ark. 248, 250,620 S.W.2d 258 (1981), app. dism'd, 455 U.S. 931 (1982), the court offered the following general observation about the application of the FOIA:
 Whether a statute should be construed narrowly or broadly depends upon the interests with which the statute deals . . . [and] statutes enacted for the public benefit are to be interpreted most favorably to the public . . . [T]he Freedom of Information Act was passed wholly in the public interest and is to be liberally interpreted to the end that its praiseworthy purposes may be achieved.
(Quoting Laman v. McCord, 245 Ark. 401, 432 S.W.2d 753 (1968)). The court has maintained this "liberal construction" of the FOIA. See, e.g.,Arkansas Dep't of Fin. Admin. v. Pharmacy Assocs., 333 Ark. 451,970 S.W.2d 217 (1998); Arkansas DOH v. Westark Christian Action,322 Ark. 440, 910 S.W.2d 199 (1995). Moreover, the court has consistently held that any exemption from disclosure under the FOIA is to be narrowly construed. See, e.g., Pharmacy Assocs., supra; Stilley v. McBride,332 Ark. 306, 965 S.W.2d 125 (1998); Westark Christian Action, supra; Byrnev. Eagle, 319 Ark. 587, 892 S.W.2d 487 (1995); Johninson v. Stodola,316 Ark. 423, 872 S.W.2d 374 (1994); Legislative Joint Auditing Comm. v.Woosley, 291 Ark. 89, 722 S.W.2d 581 (1987). Thus, when the scope of an exemption is unclear or ambiguous, the court will interpret it in a manner that favors disclosure. Young v. Rice, 308 Ark. 593,826 S.W.2d 252 (1992); Ragland v. Yeargan, 288 Ark. 81, 702 S.W.2d 23
(1986).
The FOIA provides for the disclosure upon request of certain "public records," which are statutorily defined as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(1).
The materials you have supplied me comprise the following:
A document captioned "CASE SUMMARY," dated November 21, 2002.
 Addendum A to the Case Summary, dated November 20, 2002, summarizing a taped interview with Mr. Shewmaker.
 Addendum B to the Case Summary, consisting of various handwritten notes made over time by the former city employee. It is unclear from your request whether the employee made these notes on her own initiative or at the behest of investigators.
 Addendum C to the Case Summary, setting forth Section IX of the City of Maumelle Handbook, entitled "HARASSMENT."
 Addendum D to the Case Summary, setting forth Section III of the City of Maumelle Employee Handbook, entitled "EMPLOYMENT."
 A series of summaries of witness interviews, dated November 19 through November 21, 2002.
 A series of what appear to be the investigators' handwritten notes made during the course of the interviews.
In addition, you possess the interview tapes themselves, which you have not provided me. In my opinion, all of these records are clearly "public" under the definition set forth above.
The majority of the documents you have produced constitute a record of the city's investigation into Mr. Shewmaker's actions. Before discussing whether these documents are subject to disclosure, I should discuss the status of various documents that fall into different categories.
First, the addenda setting forth excerpts from the City of Maumelle Employee Handbook are simply general statements of municipal policy. In my opinion, these documents clearly constitute "public records" that fall within no available exemption from disclosure. Accordingly, I believe you should produce these records.
Secondly, I suspect, although I am not certain, that the former employee compiled her handwritten notes on her own initiative, not at the behest of investigators. In Ark. Op. Att'y Gen. No. 2000-166, I opined that a document generated at an aggrieved employee's own instigation and subsequently conveyed to the employer constitutes a "personnel record," which would be subject to disclosure under the FOIA only to the extent that its release would not constitute a "clearly unwarranted invasion of personal privacy." A.C.A. § 25-19-105(b)(12). Although the FOIA does not define the phrase "clearly unwarranted invasion of personal privacy," the Arkansas Supreme Court has developed a balancing test in applying the standard, weighing the interest of the public in accessing the records against the individual's interest in keeping the records private. SeeYoung v. Rice, 308 Ark. 593, 826 S.W.2d 252 (1992). If the public's interest outweighs the individual's interest, the release of the records will not constitute a "clearly unwarranted invasion of personal privacy."
In the present case, I believe the balance of interests clearly favors disclosure. The record contains serious allegations of racial discrimination by a senior city official. In my opinion, the public has a strong interest in knowing both the substance of such allegations and the nature of the city's response. By contrast, I believe the former employee has a minimal interest in keeping private her complaints of racial mistreatment. Consequently, I believe the handwritten notes are not confidential under the balancing test set forth at A.C.A. §25-19-105(b)(12) to determine the disclosability of personnel records
All of the remaining records itemized above were compiled by the city in the course of investigating the allegations. In my opinion, these documents, as well as the interview tapes, constitute "employee evaluation or job performance records." See Ark. Ops. Att'y Gen. Nos.2002-282; 2001-112; 99-412; 97-222; 95-351; 94-306; 93-055 (public records relating to disciplinary actions are properly classified as "employee evaluation or job performance records"). I have consistently opined that records which detail an employee's performance or lack of performance with regard to a specific incident or incidents are properly classified as employee evaluation or job performance records. Id. Such records are disclosable under the FOIA only under the following circumstances:
 (a) There has been a final administrative resolution of any suspension or termination proceeding;
 (b) The records in question formed a basis for the decision made in that proceeding to suspend or terminate the employee; and
 (c) There is a compelling public interest in the disclosure of the records in question.
A.C.A. § 25-19-105(c)(1).
In my opinion, the first two criteria for release set forth at A.C.A. §25-19-105(c)(1) have clearly been satisfied in this instance. You have informed me that the mayor terminated Mr. Shewmaker's employment, presumably pursuant to A.C.A. § 14-42-110(a)(1), which authorizes a mayor to remove department heads, and that no administrative avenue of appeal is available.[1] I am further persuaded that the records in question clearly served as a basis for Mr. Shewmaker's termination.
With respect to the third criterion set forth at A.C.A. §25-19-105(c)(1), I question your conclusion that no compelling public interest exists in releasing the records at issue. The FOIA at no point defines the phrase "compelling public interest." However, Professor Watkins has provided some guidelines for making the factual determination whether such an interest exists. He states, for instance: "The nature of the problem that led to the suspension or termination will undoubtedly bear on the `compelling public interest' question. . . ." Watkins, supra
at 146. He further observes: "The public's interest in disclosure is most likely to be compelling when the records reflect a breach of trust or illegal conduct by public employees. . . . However, the mere fact that an employee has been suspended or terminated does not mean that the records should be made public; if that were the case, the `compelling public interest' phrase would be a redundancy. . . ." Id. Elaborating on this point, Professor Watkins remarks: "A general interest in the performance of public employees should not be considered compelling, for that concern is, at least theoretically, always present." Id. at 147. He additionally notes that the status of the employee, or "his rank within the bureaucratic hierarchy," may also be relevant in determining whether a "compelling public interest" exists. Id. at 146-47 (remarking that "[a]s a practical matter, such an interest is more likely to be present when a high-level employee is involved than when the [records] of `rank-and-file' workers are at issue.")
In applying these guidelines, I am struck by the fact that Mr. Shewmaker, as Planning and Zoning Director, was an important official of the City of Maumelle. See Ark. Op. Att'y Gen. No. 2002-095
(characterizing the subject's high-ranking supervisory position as Labor Safety Administrator as one factor supporting disclosure). Moreover, without belaboring the details, I will note that the allegations made by various individuals involve instances of racial and sexual discrimination that clearly constitute matters of public concern. In my opinion, the public's interest in knowing the details of this reported conduct by a highly placed public official is quite compelling, as is its interest in knowing how the city responded to the complaint. Consequently, I believe you should disclose all of these documents, including copies of the audiotapes.
Finally, I should note that a number of the records at issue, including the summaries of witness statements, reference other municipal employees. Such records may qualify as those employees' "personnel records," and as such must be reviewed under the "clearly unwarranted invasion of personal privacy" standard discussed above. See Ark. Op. Att'y Gen. No. 2002-055. Given that these individuals merely reported what they saw or heard, I do not believe their privacy interests outweigh the public interest in knowing all the details of the investigation. Accordingly, I do not believe you should redact their names before disclosing the records.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh
[1] I am aware that Mr. Shewmaker might elect to pursue matters by filing an EEOC complaint. However, I would not characterize doing so as seeking an administrative appeal. As one leading commentator on the FOIA notes in discussing this issue: "The term `final administrative resolution' refers to the final decision-making step taken by theemploying entity. . . ." John J. Watkins, The Arkansas Freedom ofInformation Act (3d ed. 1998), at 144 (emphasis added). In a footnote to this comment, Professor Watkins describes as "immaterial" the fact that judicial review might still be available. Id. at 236 n. 413 (citing Ark. Op. Att'y Gen. No. 95-204). See Ark. Op. Att'y Gen. No. 99-399 ("If the matter of Mr. Prater's termination has proceeded to the EEOC, I will assume that there has been a final administrative resolution of the matter within the Jonesboro Police Department, in which case the first condition stated above has been met.").