Stephen S. STOKWITZ,
Plaintiff–Appellant,

v.

UNITED STATES of America, Department of the Navy of the United States of America, Department of Justice of the United States of America, Defendants–Appellees.

No. 86–5883.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1987.

Decided Nov. 3, 1987.

Emory L. Boutilier, San Diego, Cal., for plaintiff-appellant.

John Neece, San Diego, Cal., for defendants-appellees.

Before BROWNING, Chief Judge, TANG and REINHARDT, Circuit Judges.

JAMES R. BROWNING, Chief Judge:

Stokwitz was employed as a civilian attorney by the United States Navy at the Naval Ocean Systems Center ("NOSC"). Stokwitz's secretary and assistant gave a list of allegations of misconduct involving Stokwitz to his immediate supervisor. The supervisor requested a Naval Investigative Service ("NIS") inquiry. Stokwitz was informed of the investigation, ordered to surrender his access badge, and escorted off NOSC property. Shortly thereafter, Stokwitz's supervisor, his secretary, his assistant, and another NOSC employee acting without a warrant or prior authorization, searched Stokwitz's office and briefcase. They seized several items, including Stokwitz's personal copies of his federal and state tax returns for 1982 and 1983, the originals of which had been filed with the Secretary of the Treasury.

The seized copies of Stokwitz's tax returns were audited by a NOSC employee and disclosed to various NIS agents and other Navy employees, and Stokwitz was questioned about their contents. His employment was terminated the next day.

Following his discharge, Stokwitz initiated several suits, including this action for damages under 26 U.S.C. § 7431 against the United States, the Department of Jus-

tice and the Department of the Navy for disclosure of his tax returns in violation of 26 U.S.C. § 6103.

The district court granted the government's motion for summary judgment on the ground that sections 6103 and 7431 applied only to disclosure of information received by the Internal Revenue Service (IRS) from the taxpayer, and not to disclosure of information obtained directly from the taxpayer by others.

The district court noted that section 7431 applied to disclosure of "return or return information" in violation of section 6103, and that the quoted terms had the same meaning in both statutes. One element of the definition of "return" was that it be "filed with the Secretary." 26 U.S.C. § 6103(b)(1). Similarly, an element of the definition of "return information" was that it be "received by, recorded by, prepared by, furnished to, or collected by the Secretary." 26 U.S.C. § 6103(b)(2).

The court found the information disclosed in this case was "obtained directly from the plaintiff in the course of a search of his work space at NOSC," and therefore was not "filed with" or "received etc." by the Secretary and subsequently disclosed either directly or indirectly by IRS employees to the Navy employees.

The court noted section 6103 was not enacted to prevent government employees from obtaining information from the taxpayer directly through such means as civil discovery or a search warrant; and stated it "was convinced that return and return information in the taxpayer's hands are subject to no greater protection than other private papers in taxpayer's possession." If the information was wrongfully obtained from the taxpayer by Navy employees, the court said, the appropriate remedy was the pending suit initiated by Stokwitz against these employees under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ The district court concluded that section 6103, and hence section 7431, were directed "at those government officers and employees who obtained returns and return information as a result of these materials being filed by or on behalf of the taxpayer, or received by, furnished to, or collected by the Secretary."

We agree.

The statute must be read as a whole. *See United States v. Morton*, 467 U.S. 822, 828, 104 S.Ct. 2769, 2773, 81 L.Ed.2d 680 (1984); *Moorhead v. United States*, 774 F.2d 936, 941 (9th Cir.1985). Read in this way, section 6103 is clearly designed to protect the information flow between taxpayers and the IRS by controlling the disclosure by the IRS of information received from taxpayers.

The legislative history of section 6103 indicates Congress's overriding purpose was to curtail loose disclosure practices by the IRS. Congress was concerned that IRS had become a "lending library" to other government agencies of tax information filed with the IRS, and feared the public's confidence in the privacy of returns filed with IRS would suffer. *See* 122 Cong.Rec. 24013 (1976) (remarks of Sen. Weicker).[1] The Senate Report explained: "[T]he IRS probably has more information about more people than any other agency in this country. Consequently, almost every other agency that has a need for information ... logically seeks it from the IRS." S.Rep. No. 938, 94th Cong., 2nd Sess. 316–17, *reprinted in* 1976 Code Cong. & Admin. News 2897, 3746. Congress also sought to end "the highly publicized attempts to use the Internal Revenue Service for political purposes" involving delivery of tax returns to the White House by the IRS, *see* 122 Cong.Rec. 24013 (1976) (Remarks by Sen. Dole); and to regulate "the flow of tax data from the IRS to State Governments

---

1. Senator Weicker said:
Over the years, a myriad of Government agencies have gained access to tax information of the IRS. Defacto, IRS became a lending library of confidential tax information. As the Privacy Commission noted, information the IRS maintained was treated as a "generalized governmental asset."
122 Cong.Rec. 24013 (1976).

..." *Id.* (remarks of Sen. Weicker). In short, section 6103 was aimed at curtailing abuse by government agencies of information filed with the IRS. *See* S.Rep. No. 938, 94th Cong., 2nd Sess. 318–19, 345, *reprinted in* 1976 Code Cong. & Admin. News 3747–48, 3774–75; *see also Chamberlain v. Kurtz*, 589 F.2d 827, 835 (5th Cir.1979).

At the same time, Congress realized tax information on file with the IRS was often important to other government agencies. Revised section 6103 represents a legislative balancing of the right of taxpayers to the privacy of tax information in the hands of the IRS and the legitimate needs of others for access to that information. *See*

*United States v. Bacheler*, 611 F.2d 443, 446 (3rd Cir.1979).

Consistent with the legislative history, the elaborate disclosure procedures of section 6103 are directed to controlling the distribution of information the IRS receives directly from the taxpayer—information the taxpayer files under compulsion and the threat of criminal penalties. *See* S.Rep. No. 938, 94th Cong., 2nd Sess. 328, *reprinted in* 1976 Code Cong. & Admin. News 3757. Section 6103 establishes a comprehensive scheme for controlling the release *by the IRS* of information received from taxpayers to discrete identified parties, subject to specified conditions.[2] As the district court noted, the statutory defi-

**2.** Virtually all of the sections of § 6103 involve disclosures authorized by the Secretary of the Treasury, i.e., the IRS. Subsection (c) permits disclosure by "the Secretary" to persons designated by the taxpayer. Subsection (d) opens tax information to specialized state agencies for certain purposes, but provides the information shall not be disclosed to the extent "the Secretary" determines disclosure would identify a confidential informant or impair an investigation. Subsection (e) provides that a return may be disclosed to certain identified persons having a material interest; when the disclosures are conditioned upon a finding, the finding is to be made by "the Secretary." *See, e.g.,* (1)(D)(vi), (E)(ii), (F)(ii), (3)(B), (4), (6). Subsection (f) provides that "the Secretary" shall furnish returns and return information to identified committees of the Congress. Subsection (g) provides that return or return information shall be provided to the President by "the Secretary"; "the Secretary" may also disclose return information to an authorized representative of the Executive Office and the President or the head of any federal agency under certain circumstances, and "the Secretary" shall notify the individual of the disclosure. Subsection (h) authorizes "the Secretary" to make disclosure to certain officers and employees for purposes of tax administration "if the Secretary" has referred the case to the Department of Justice for prosecution, or "if the Secretary" receives a written request from named officials at the Department of Justice. Subparagraph (i) provides for disclosure on court order in certain nontax criminal investigations, but provides "the Secretary" shall not make such disclosure if he determines it would identify a confidential informant or impair an investigation. "The Secretary" may disclose return information that may constitute evidence of violation of federal criminal laws. The information shall not be disclosed or admitted in evidence if "the Secretary" determines a confidential informant will be identi-

fied or an investigation impaired. Subsection (g) provides that "the Secretary" shall furnish returns and return information for statistical use under certain circumstances. Subparagraph (k) allows the disclosure of returns and return information for various tax administrative purposes, and where appropriate identifies "the Secretary" as the authority authorized to make the release. Subparagraph (*l*) provides for disclosure of returns for various purposes with the same recognition of "the Secretary" as the acting authority (sections (1), (2), (3), (4), (5), (6)). Subsection (m) provides that "the Secretary" may disclose taxpayer identity information, and taxpayer's mailing address for specified purposes. Subparagraph (n) provides that "the Secretary" will prescribe regulations for the disclosure of returns and return information for processing, storage, etc. Subsection (p) provides the procedures and recordkeeping for all disclosures permitted by the section. Requests of inspections, and disclosures are to be made in a manner and time and place prescribed by "the Secretary." Disclosure is to be in the form "the Secretary" determines necessary or appropriate; "the Secretary" is to maintain a system of records of requests for inspection or disclosure. "The Secretary" is also to furnish the Congress with a report of such requests, inspections, and disclosures. Any agency receiving inspections or disclosures from the Secretary is to establish and maintain "to the satisfaction of the Secretary" appropriate records, and maintain to the satisfaction of "the Secretary" secure storage, restrict "to the satisfaction of the Secretary" access to the information, provide such other safeguards as "the Secretary" determines to be necessary, furnish a report "to the Secretary", and "return to the Secretary" such returns or return information" that have been disclosed. "The Secretary" is to report to the Congress the procedures and safeguards established for the security of returns and return information furnished under the § 6103(p)(5). Subsection (q)

nitions of "return" and "return information" to which the entire statute relates, confine the statute's coverage to information that is passed through the IRS.[3] The companion Treasury regulations, similarly, are exclusively concerned with disclosure by the IRS. *See* Treas.Regs. §§ 301.-6103(a)–1 to (p)(7)–1 (1986).

That is as far as the statute goes. Contrary to appellant's contention, there is no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information.

Appellant relies upon subsection (a), the general confidentiality provision of section 6103, pointing out that it prohibits disclosure by an employee of the United States "of any return or information *obtained in any manner*" (emphasis added). Focusing on this phrase alone, however, ignores the central fact evident from the legislative history, structure, and language of section 6103 (including the definitions of "return and return information") that the statute is concerned solely with the flow of tax data to, from, or through the IRS.[4]

Appellant relies upon dictum in *Association of American R.Rs. v. United States*, 371 F.Supp. 114, 117 (D.D.C.1974) that the purpose of the protection afforded tax data by sections 6103 and 7213 "would be meaningless if such protection were not extended to copies of tax returns and to the pertinent data and information in the hands of the taxpayer."[5] It is quite clear, however, that this was not Congress's view when it revised section 6103. Thus, for example, the Senate report expressly disclaimed any intention "to limit the right of an agency (or other party) to obtain returns or return information directly from the taxpayer through the applicable discovery procedures," (S.Rep. No. 938, 94th Cong., 2nd Sess. 330, *reprinted in* 1976 U.S.Code Cong. & Admin.News 3759; *accord United States v. Art Metal–U.S.A., Inc.*, 484 F.Supp. 884, 887 (D.N.J.1980)), and courts generally have held the restrictions of section 6103 inapplicable to discovery of tax data in the hands of the taxpayer. *See, e.g., Heathman v. District Court*, 503 F.2d 1032, 1035 (9th Cir.1974).

Appellants argue a broader interpretation is necessary to achieve Congress's goal of guaranteeing the confidentiality of tax information in order to encourage full and honest reporting of income tax. *See* S.Rep. No. 938, 94th Cong., 2nd Sess. 318, *reprinted in* 1976 Code Cong. & Admin. News 3747; *Church of Scientology of Cal. v. IRS*, 792 F.2d 153, 158–59 (D.C.Cir.1986) (en banc), *cert. granted*, — U.S. —, 107 S.Ct. 947, 93 L.Ed.2d 996 (1987). But Congress intended only, in the words of Senator Weicker, that "[e]ach taxpayer should be confident that *the filing of his or her tax returns* in no way compromises the right of privacy." 122 Cong.Rec. 24013 (1976) (emphasis added). Nothing in the statute or its legislative history suggests an intention to protect a taxpayer's financial data from any potential risk of disclosure except that arising from the filing of the taxpayer's return with the IRS.

Appellant's interpretation would also render the statute excessively burdensome. Section 6103 would become the sole means by which the government could obtain tax information legitimately. If a government employee obtained tax information directly from the taxpayer, through discovery or a subpoena, or in any other appropriate way,

---

authorizes "the Secretary" to prescribe any other necessary regulations.

**3.** Subsection (a) declares that "returns and return information" shall be confidential and shall not be disclosed except as authorized by section 6103, and subsection (b) defines these terms as limited to material filed with or received by "the Secretary." 26 U.S.C. § 6103(a).

**4.** We do not agree with the statement in the district court's order, however, that section 6103 applies only to IRS employees. Section 6103 applies to all who receive information from the IRS, directly or indirectly.

**5.** Appellants also cite *United States v. Sapp*, 371 F.Supp. 532 (S.D.Fla.1974), but the opinion does not indicate anything was made of the fact (disclosed in passing) that the tax data involved was in the possession of the taxpayer's accountant. Under either the present or prior version of section 6103, the Department of Justice could have obtained taxpayer's return directly from IRS for presentation to the grand jury.

and subsequently disclosed that information, the government would be subject to criminal and civil penalties. Government employees could protect themselves only by securing the information through the cumbersome procedures of section 6103. Section 6103 was not designed to provide the only means for obtaining tax information; it simply provides the only means for acquiring such information from the IRS.

This is not to say that appellant has no remedy for the alleged unlawful seizure and subsequent use of his tax information. Those issues can be addressed in Stokwitz's *Bivens* action, or through any other applicable tort action. The confidentiality of tax information may also be preserved in civil proceedings through protective orders. *See Premium Service Corp. v. Sperry Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir.1975).

Since section 6103 applies only to information filed with and disclosed by the IRS, and Stokwitz's tax returns were not obtained directly or indirectly from the IRS, we affirm.

AFFIRMED.