Russell J. BYRNE *v.* Glen EAGLE and
Arkansas Development Finance Authority

94-677                                      892 S.W.2d 487

Supreme Court of Arkansas
Opinion delivered February 20, 1995

*Trotter Law Firm, P.A.*, by: *Russell J. Byrne*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard*, a Limited Co., for appellees.

ROBERT L. BROWN, Justice. On February 25, 1994, appellant Russell Byrne, acting on his own behalf and as a member of his law firm and the public, served a Freedom of Information request on appellee Arkansas Development Finance Authority and requested information concerning the building of a multi-purpose events center in North Little Rock. It subsequently became known that the interested party was Arkansas Cultural Complex Study, Inc. On February 28, 1994, ADFA responded to the request in the form of a letter from appellee Gene Eagle, Vice President of ADFA. The response stated that the information requested by Byrne was exempt from disclosure pursuant to Ark. Code Ann. §§ 15-5-409(b) (Repl. 1994) and 25-19-105 (Supp. 1993). Regarding the issue of whether an application had been made, Eagle wrote:

> While I have been reviewing data and conducting discussions with several parties concerning the project described in your letter, we do not have a formal application relating to the proposed project. After we received your inquiry, we notified those parties and they instructed us not to release any information. Additionally, until there has been a review of an application by ADFA which results in a recommendation that the application be approved, the application, all supporting documents, instruments, proposed contracts, estimated costs or other evidence submitted therewith shall be confidential and shall not be open to public review.

On March 3, 1994, Byrne wrote again and stated that Ark. Code Ann. § 15-5-409(b) only exempted applications and documents submitted with applications from public review. He contended in the same vein that § 15-5-409(b) made no mention of documents submitted to the ADFA without an application. He requested once more that Eagle make the submitted information on the multi-purpose events center available for his inspection. Eagle again denied the request on grounds of the statutory exemption.

On March 9, 1994, Byrne filed suit and alleged that Eagle's and ADFA's refusal to supply him with the data was violative of the Freedom of Information Act, codified at Ark. Code Ann. § 25-19-101 *et seq.* (Repl. 1992 & Supp. 1993). In his complaint, he asked for a declaratory judgment and injunctive relief and sought all documents relating to the development of a multi-purpose events center in North Little Rock. Eagle and ADFA answered and affirmatively pled that the documents requested were exempt from disclosure under Arkansas law. Following a hearing on the matter, the trial court entered an order dismissing Byrne's complaint.

The one argument made by Byrne on appeal is that no application had been made to Eagle and ADFA on this project; thus, the documents submitted in connection with the multipurpose events center in North Little Rock are subject to disclosure under the Freedom of Information Act. We first address the Act itself. Its keystone provision reads:

> Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.

Ark. Code Ann. § 25-19-105(a) (Supp. 1993). Hence, it is clear that there must be a specific statutory mandate to exempt public records from disclosure. *See Legislative Joint Auditing Committee v. Woodsey*, 291 Ark. 89, 722 S.W.2d 581 (1987).

The Freedom of Information Act is broadly construed in favor of disclosure, and exceptions to the Act are narrowly construed in order to counterbalance the self-protective instincts

of the governmental bureaucracy. *McCambridge* v. *City of Little Rock*, 298 Ark. 219, 766 S.W.2d 909 (1989). The intention of the General Assembly to exclude records from inspection must be clear. *Id.* If the intention of the General Assembly to impose confidentiality is doubtful, openness is the result. *Ragland* v. *Yeargan*, 288 Ark. 81, 702 S.W.2d 23 (1986). At the same time, we will balance the laudable interest in favor of disclosure with the intent of the General Assembly and do so with a common sense approach. *Sebastian County Chapter of the American Red Cross* v. *Weatherford*, 311 Ark. 656, 846 S.W.2d 641 (1993); *Bryant* v. *Mars*, 309 Ark. 480, 830 S.W.2d 869 (1992); *Simmons First Nat'l Bank* v. *Liberty Mut. Ins. Co.*, 282 Ark. 194, 667 S.W.2d 648 (1984).

The exemption from the FOIA claimed by the appellees is set out in Ark. Code Ann. § 15-5-409 (Repl. 1994), which reads in relevant part:

> (a) All applications filed with the Arkansas Development Finance Authority under the provisions of this subchapter shall first be reviewed by the appropriate designated staff officials of the authority or by a committee consisting of members of the authority for preliminary review and recommendation prior to being submitted for consideration by the authority.

> (b) All applications submitted to the authority and all supporting documents, instruments, proposed contracts, estimated costs, or other evidence submitted therewith shall be confidential and shall not be open to public review except as provided in this subchapter, and all staff meetings or meetings of the review committee of members of the authority established for the purpose of giving preliminary review of the applications shall be confidential and shall not be open to the public.

> (c) Upon conclusion of the preliminary review of each request for a guaranty hereunder, if the request for guaranty is submitted to the authority with a recommendation that it be approved, the application and all supporting documents, including the findings and the recommendations resulting from the staff or review committee

thereof, shall be an open public record available for inspection during all regular business hours.

(d) In the event that an application from a developer requesting a guaranty hereunder is not recommended for approval by the authority under this subchapter, that application and all supporting documents, including all findings and recommendations in regard thereto by the staff or review committee, shall continue to be confidential and not open to public inspection.

(e) The developer shall be notified in writing of any staff or review committee determination that the application is not being submitted to the authority with a recommendation that it be approved, which notice shall advise the developer that the application will be kept confidential unless the developer shall, within thirty (30) days from the date of receipt of the written notice, file a petition with the authority requesting that the authority hold a hearing in regard to the application, in which event the application and all supporting documents shall become public information available for public inspection.

Byrne makes two salient points in his argument. First, he underscores the fact that Eagle himself admitted that no formal application had been made by the Arkansas Cultural Complex Study, Inc. Eagle stated this in his letter to Byrne on February 28, 1994, and then reiterated it at the hearing. Next, Byrne alludes to § 15-5-409(b) itself which clearly requires an application before confidentiality pertains.

Eagle testified at the hearing that ADFA was created as a state finance authority for housing, economic development, health care, education, and community developments. The ADFA Bond Guaranty Program, he stated, was established in 1985 to provide credit support for any bond issue approved by the authority. Many of the projects and companies that the ADFA deals with were not strong enough financially to obtain access to the bond market, he explained, and the State guaranty provided those entities with access to that market. He testified that only ongoing entities are required to submit written applications. Start-up ventures, like the one in question, were only required to submit a business plan projection and performance studies, not a written application.

Eagle then went on to say that the Arkansas Cultural Complex Study, Inc. submitted an application for the multi-purpose events center in question. He testified that the application was in the form of a proposal "which detailed what it was they were trying to do." Once the proposal was submitted, ADFA started gathering additional information, including a business plan, and conducting its own research. Eagle added that ADFA did not have enough information at the time of his testimony for a complete review. He stated that the information compiled thus far was part of the application process. Once that application is complete, according to Eagle, ADFA will condense the data into report form and submit it to the review committee of the board for review of the application. If the recommendation is for approval, then the application and all supporting documents are open for public inspection and a public hearing on the matter is held.

At the conclusion of the testimony, the trial court ruled:

> Well, it seems to me, from what I have heard here today, that there are different methods of making applications, and Mr. Eagle has testified that an application has been made and that, according to the statute, until such time as that application is approved, I believe that the confidentiality provision of the statute would apply and that those records should be kept confidential until such time as the public hearing and, as I understand the process, once that has been approved, then that does become a matter of public record and you are welcome to it at that point . . . That is a working type paper until such time as it is approved; therefore, it is protected by the guaranty provision, and apparently that's what happened in it and, apparently, there is no real case law on this particular point.

This case turns on the narrow question of whether what the interested party has submitted to ADFA constitutes an "application" for purposes of the statutory exemption. According to *Black's Law Dictionary*, p. 98 (6th Ed. 1990), an "application" can mean virtually anything:

> A putting to, placing before, preferring a request or petition to or before a person. The act of making a request for something. A petition.

Eagle of ADFA appeared to state it both ways. He initially wrote Byrne in February 1994 that no formal application had been made, albeit information had been received. At the hearing, however, Eagle testified that saying no "formal" application had been made was a poor choice of words and that what he meant was that ADFA did not have a "complete" application. He made these additional comments, in response to questioning by Byrne, who served as his own counsel:

> BYRNE: Okay. And you are stating that this is all like an informal process that goes on for a little while so there has been no formal written application?

> EAGLE: I have a great deal of written material that they have given me.

> BYRNE: But no formal things such as application on the top or anything like that designating an application?

> EAGLE: You can see the file over there is pretty extensive.

> BYRNE: That is not my question. You have no written document on the top of it?

> EAGLE: I have a proposal which has our name on it which says we will loan the money or guarantee money for them, which they have prepared.

> BYRNE: So I take that as a no?

> EAGLE: I think it is a definite yes, we have an application.

■ The ruling by the trial court that the records on the project constituted an application makes good, practical sense. We are not of a mind to limit the term "applications" solely to documents titled as such and signed by interested parties under oath, as Byrne suggested at oral argument. The explanation by Eagle of the different application procedures followed by ADFA for an existing business seeking a loan guarantee as opposed to a "start-up" business with no performance record seems entirely plausible. For us to treat the two application processes differently for purposes of public disclosure would render inconsistent and absurd consequences. Moreover, it is clear beyond question that

594

the intent of the General Assembly was to keep the application process confidential during the preliminary stages until an approval recommendation had been made to the authority. Ark. Code Ann. § 15-5-409(c) (Repl. 1994).

■ The rationale behind the confidentiality in this context is legitimate. We can readily see how public disclosure of the disapproval of loan guarantees regarding new or existing businesses could adversely affect those concerns and chill the enthusiasm of future applicants who might otherwise wish to apply to ADFA for financial assistance. If a new venture is turned down for financial assistance by ADFA and that is made public, it could damage and impede the ability of the venture to obtain funding elsewhere. Certainly, the state has established a firm policy in protecting information pertaining to economic development, as expressed in another exemption to the FOIA concerning records kept by the Arkansas Industrial Development Commission. *See* Ark. Code Ann. § 25-19-105(b)(9)(B) (Supp. 1993); *see also Watkins, J., Arkansas Freedom of Information Act*, p. 122 (M & M Press 2d Ed. 1994).

■ In sum, we conclude that the term "applications" used in Ark. Code Ann. § 15-5-409(b) covers the proposal made by Arkansas Cultural Complex Study, Inc. From the colloquy quoted above, it appears that the proposal, business plan, and other supporting documents were in the courtroom at the time of the hearing. Neither party requested that the trial court inspect the ADFA file; nor did the trial court take it upon itself to examine the file to evaluate whether it comprised an application. That, without question, would have been preferable, and we have held that when an *in camera* review by the trial court is requested by a state agency, it must take place. *Gannett River States Publishing Co. v. Arkansas Indus. Dev. Comm'n*, 303 Ark. 684, 799 S.W.2d 543 (1990).

Here, as a result, we are limited to the facts before us and those facts are that a proposal for a loan guarantee supported by certain documentation was made to ADFA. Byrne does not contest that fact or contend that some of the documents in the ADFA file are not part of the application process for Arkansas Cultural Complex Study, Inc. His sole point is that there is no application form in the file, and the statutory exemption, as a consequence, does not apply.

In the past, we have determined the intent of the General Assembly in connection with FOIA requests and interpreted statutory exemptions accordingly. For example, we have held that the term "undisclosed" investigations included "ongoing" investigations. *See Martin* v. *Musteen*, 303 Ark. 656, 799 S.W.2d 540 (1990) (interpreting Ark. Code Ann. § 25-19-105(b) (1987)). We have further concluded that a statutory allusion to the working papers and correspondence of the "Attorney General" in an exemption to the FOIA referred to the office of Attorney General, including deputies and representatives, and not to one individual. *See Bryant* v. *Mars, supra.*

In the instant case, the issue boils down to whether a proposal for financial assistance is comparable to, or synonymous with, an application for such assistance. Partly, it is a question of semantics. We decline to distinguish an application for a loan guarantee from a proposal for a loan guarantee or to have this decision turn on whether a document is styled a proposal or an application. We conclude that the effect of both is the same. In deciding as we do, we consider this to be a common sense approach which gives effect to the unmistakable intent of the General Assembly.

Affirmed.