Mr. Bunny Adcock, Interim President Arkansas Development Finance Authority 100 Main, Suite 200 Post Office Box 8023 Little Rock, Arkansas 72203-8023
Dear Mr. Adcock:
This is in response to your request for an opinion regarding the Arkansas Freedom of Information Act (FOIA). Specifically, you have asked for an opinion on the following:
 The Arkansas Development Finance Authority is the administering agency for the Low-Income Housing Tax Credit Program as set forth in § 42 of the U.S. Internal Revenue Code. Is the amount of such credit and the identity of the recipient to whom it is awarded subject to public disclosure under the Freedom of Information Act?
Federal income tax credits for qualified buildings are offered in order to foster housing projects for low to moderate income individuals; allocations of the credit within a state are to be made by an authorized state housing credit agency. 26 U.S.C.A. § 42 (Supp. 1996). It is my opinion that, under the circumstances presented, the identity of the recipient and the amount of the tax credit awarded should more than likely be released. However, because this situation presents very close questions of law and fact, the only definitive way to resolve the issue is to have it decided by a court.
The policy statement of the FOIA declares that "public business [shall] be performed in an open and public manner so that the electors shall be advised of the performance of public officials and of the decisions that are reached in public activity and in making public policy." A.C.A. §25-19-102 (Repl. 1992); Op. Att'y Gen. No. 95-353. In accordance, A.C.A. § 25-19-105(a) (Supp. 1995) provides:
 Except as otherwise specifically provided by this section or by laws specifically enacted to provide otherwise, all public records shall be open to inspection and copying by any citizen of the State of Arkansas during the regular business hours of the custodian of the records.
Further, A.C.A. § 25-19-103(1) (Repl. 1992) provides:
 "Public records" means writings, recorded sounds, films, tapes, or data compilations in any form, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
The Arkansas Supreme Court has stated that the FOIA is to be interpreted liberally in order to accomplish the purpose of promoting free access to public information. Johninson v. Stodola, 316 Ark. 423, 872 S.W.2d 374
(1994). Exceptions to the act are narrowly construed, and if the intention of the General Assembly to impose confidentiality is doubtful, openness is the result. Byrne v. Eagle, 319 Ark. 587, 892 S.W.2d 487
(1995).
I begin with the assumption that the Arkansas Development Finance Authority (ADFA) is an agency subject to the provisions of the FOIA. Seegenerally A.C.A. § 25-19-103 (Repl. 1992); A.C.A. §§ 15-5-101 et. seq. (Repl. 1994 and Supp. 1995). Further, it is my opinion that records maintained by ADFA generally fall within the statutory definition of public records as set out in A.C.A. § 25-19-103(1). Op. Att'y Gen. No.92-068. The public policy behind the FOIA indicates that public records are presumed to be open. Op. Att'y Gen. No. 92-068; see CommercialPrinting Co. et al. v. Rush, et al., 261 Ark. 468, 549 S.W.2d 790
(1977). The records are to be closed only if they fit within one of the specific exemptions to the act. Op. Att'y Gen. No. 92-068; A.C.A. §25-19-105(b) (Supp. 1995). Reference must therefore be made to the list of exemptions when reviewing records that are maintained by the ADFA.
It is my opinion that the only exemption found in § 25-19-105(b) which could possibly be applicable is § 25-19-105(b)(9)(A) regarding "[f]iles which, if disclosed, would give advantage to competitors or bidders."[1] The exemption provides in part that:
 It is the specific intent of this section that the following shall not be deemed to be made open to the public under the provisions of this chapter: . . . [f]iles which, if disclosed, would give advantage to competitors or bidders[.]
A.C.A. § 25-19-105(b)(9)(A) (Supp. 1995). This office has previously followed the federal test in construing this exemption. See Op. Att'y Gen. Nos. 94-015 and 91-390. The federal courts, in determining whether "commercial or financial information" is "confidential" and thus exempt under the federal FOIA (5 U.S.C.A. § 552(b)(4)) have required that release of the information would be likely to have either of the following effects: (1) impair the government's ability to obtain necessary information in the future or (2) cause substantial harm to the competitive position of the person from whom the information was obtained. Op. Att'y Gen. Nos. 94-015 and 93-254. Further, the competitive advantage exemption must be considered on a case-by-case basis with a view to all of the particular facts and circumstances, and the burden rests on the one claiming the exemption. Id. Specific factual or evidentiary material must be presented showing actual competition and the likelihood of substantial competitive injury from disclosure of the records. Op. Att'y Gen. No. 95-108. In sum, this review is factual in nature and must be undertaken by the custodian of the records with the assistance of the one claiming competitive harm. See Op. Att'y Gen. No.95-106.
Because there is a finite amount of federal low-income housing credit available in any year within Arkansas, the allocation of the available credit amount may be a matter of competition among housing projects. However, once a building is placed in service and the final tax credit allocation has been determined, it would appear that there could no longer be a competitive advantage in learning of the amount allocated. Accordingly, based upon the information available, there seems to be no basis for claiming the "competitive advantage" exemption. Nevertheless, a definitive answer to this question will involve factual considerations that my office is neither equipped nor authorized to undertake.
Although the factual nature of the "competitive advantage" exemption precludes a conclusive response to your question, it is my opinion that the exemption may not simply be generally applied to all records of the ADFA. A determination that all such records are exempt, in the absence of a specific showing of the likelihood of substantial competitive injury, would be contrary to the FOIA's general policy of disclosure. Seegenerally Op. Att'y Gen. No. 95-108. It would also be inconsistent with the requirement that the person or entity seeking nondisclosure must bear the burden of proving eligibility for the exemption. Id.
There is also an exception under the FOIA for records that are governed by "laws specifically enacted to provide otherwise." A.C.A. §25-19-105(a). Thus, other state statutes which might specifically exempt disclosure of the records must be considered. Although I cannot conclude that any other state statutory exemption applies in this instance, it should be noted that the statutes governing the ADFA contain exemptions to the FOIA. With regard to the ADFA Bond Guaranty Program, the General Assembly specifically enacted a law to keep the application process confidential during the preliminary stages until an approval recommendation had been made to the authority. Ark. Code Ann. § 15-5-409
(b) and (c) (Repl. 1994); Byrne v. Eagle, 319 Ark. 587, 892 S.W.2d 487
(1995). The subchapter regarding the ADFA Small Business Act also contains a similar confidentiality provision. A.C.A. § 15-5-709 (Repl. 1994). There is, however, no such exemption regarding the amount of the low-income housing credit that has been "awarded."
Next, it should be noted that the type of information at issue in your question may also be exempted by federal law. A federal law may be a law "specifically enacted to provide otherwise." A.C.A. § 25-19-105(a). Further, by virtue of the Supremacy Clause of Article VI of the United States Constitution, any federal confidentiality requirements would supersede a state statute mandating public disclosure. J. Watkins,Arkansas Freedom of Information Act 147 (2nd. ed. 1994); Op. Att'y Gen. No. 94-265. To the extent that state and federal law conflict, the federal law will control.
Initially, I cannot conclude that 26 U.S.C.A. § 42, Low-income housing credit, contains a confidentiality requirement regarding the records in question. However, section 6103 of Title 26 of the United States Code is entitled "Confidentiality and disclosure of returns and information." Section 6103 provides in part:
 (a) General rule. — Returns and return information shall be confidential, and except as authorized by this title . . .
 (2) no officer or employee of any State, any local child support enforcement agency, or any local agency administering a program listed in subsection (l)(7)(D) who has or had access to returns or return information under this section, . . .
 shall disclose any return or return information obtained by him in any manner in connection with his service as such an officer or an employee or otherwise or under the provisions of this section. . . .
(b) Definitions. — For purposes of this section
 (1) Return. — The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.
(2) Return information. — The term "return information" means
 (A) a taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense[.]
In sum, section 6103 provides that returns and return information are confidential and no officer or employee of any state shall disclose the information. There is, however, a split of authority regarding whether section 6103 prohibits disclosure of the type of records at issue in your question.
It has been stated that the definition of return information comes into play only when the immediate source of the information is a return, or some internal document based on a return, and not when the immediate source is a public document lawfully prepared by an agency that is separate from the Internal Revenue Service. Thomas v. United States,890 F.2d 18 (7th. Cir. 1989). Also, the Ninth Circuit has commented that the elaborate disclosure procedures of section 6103 are directed to controlling the distribution of information the IRS receives directly from the taxpayer — information the taxpayer files under compulsion and the threat of criminal penalties. Stokwitz v. United States, 831 F.2d 893
(9th Cir. 1987), cert. den. 485 U.S. 1033 (1988); see also Ryan v.United States, 74 F.3d 1161 (11th Cir. 1996). In Stokwitz, the court concluded that there is no indication in either the language of section 6103 or its legislative history that Congress intended to enact a general prohibition against public disclosure of tax information; the statute is concerned solely with the flow of tax data to, from, or through the IRS. In Ryan, the court noted that section 6103 protects only information filed with and disclosed by the IRS, not all information relating to any tax matter. The Ohio Attorney General relied upon Stokwitz to conclude that because a copy of Federal Income Tax Form W-2 maintained by an employer/township was not filed with, or received by, recorded by, prepared by, collected by or furnished to the Secretary of Treasury, it is not a return or return information the confidentiality of which is protected by section 6103. 1992 Ohio Op. Att'y Gen. No. 92-005.
Further, the Office of Legal Counsel for the Department of Justice has opined that the confidentiality rule of section 6103 applies only when there is a nexus between the information disclosed and information that has been in the possession of the Secretary of the Treasury. 3 U.S. Op. Off. Legal Counsel 201 (1979). The requisite nexus is absent when the source document is one that has never been within the custody or control of the Secretary; it is also immaterial that the document might be a copy of a return that actually was filed with the Secretary. Id. Therefore, it could reasonably be argued that the records held by ADFA are not based upon a taxpayer's return, rather the immediate source is the ADFA's own independent determination of the amount of the tax credit allocation.
However, the Kansas Attorney General has relied upon section 6103 to conclude that the Kansas Department of Commerce, who administers the federal low-income housing tax credit program for the State of Kansas, must keep confidential documents concerning the low-income housing tax credit program, including the amount of tax credits to be allocated. See
Kan. Atty. Gen. Op. No. 89-46. Similarly, it has been stated that the purpose of section 6103 would be meaningless if such protection were not extended to copies of tax returns and to the pertinent data and information in the hands of the taxpayer. Association of AmericanRailroads v. United States, 371 F.Supp. 114 (1974) (decided under prior version of section 6103). Also, the Texas Attorney General has commented that information in an employee's Withholding Allowance Certificate, Form W-4, is protected from release by section 6103 and must be withheld from disclosure. Tex. Att'y Gen. Op. OR94-182. Similarly, this office has opined that section 6103 prohibits the release, by state officials or employees, of amounts withheld for federal tax purposes from the public relations accounts of constitutional officers. Op. Att'y Gen. No.91-093; see also Op. Att'y Gen. No. 88-307 (there is a privacy interest in terms of the type and amount of withholdings).[2] Thus, it could also reasonably be concluded that the tax credit allocation is confidential and the ADFA is prohibited from disclosing such records under section 6103.
Although there is a split of authority, it is my opinion that more than likely an Arkansas court would conclude that disclosure of only the amount of the housing tax credit awarded and the name of the recipient is not prohibited under section 6103. The ADFA is required to submit to the Secretary of the Treasury an annual report specifying the amount of the housing credit allocated to each building along with sufficient information to identify the taxpayer recipient, see26 U.S.C.A. § 42(l)(3); however, the actual records in question have not been within the custody of or passed through the IRS. See Stokwitz, supra.
It is my opinion that the foregoing conclusion is supported by the more recent applicable case law. In order to obtain additional guidance regarding the application of section 6103, I suggest that you request an opinion from either the Internal Revenue Service, the Department of Justice, or the United States Attorney's Office. However, because of the split of authority, the only definitive way to resolve the issue is to have it decided by a court.
This office has also opined that the exemptions found in the federal FOIA are laws "specifically enacted" to provide for exemption of documents from public disclosure. See Op. Att'y Gen. No. 94-265. Therefore, we must also consider the applicability of the federal FOIA and determine whether any of its exemptions prohibit disclosure. Initially, it must be noted that it is possible for a state agency to be subject to the provisions of the federal FOIA. See generally St. Michael's Convalescent Hosp. v. Stateof California, 643 F.2d 1369 (9th Cir. 1981); DeHarder Investment Corp.v. Indiana Housing Finance Authority, 909 F.Supp. 606 (1995). Although such an inquiry is generally fact specific, two factors are often described as relevant to the determination of agency status: (1) whether the entity has independent decisional authority and (2) whether the entity is subject to extensive federal control. DeHarder, supra.
However, it has been stated that the mere use of federal funds pursuant to extensive federal regulations does not by itself transform a state agency into a federal agency for purposes of the FOIA. See St.Michael's, supra; DeHarder, supra. Although there is a factual question regarding the supervisory authority of the federal government over the ADFA, in DeHarder, the court concluded that the Indiana Housing Finance Authority, the agency responsible for awarding low-income housing tax credits, did not fall within the purview of the federal FOIA. The court noted that the IHFA was subject to almost no federal supervision over its business transactions. Consequently, it is my opinion that in all likelihood a court would conclude that the federal FOIA is not applicable to the ADFA. Nevertheless, even if the federal FOIA was applicable, the only exemption from disclosure that could possibly be applicable is5 U.S.C.A. § 552(b)(4) which involves confidential commercial or financial information. As mentioned earlier, this office has previously followed the federal test regarding 5 U.S.C.A. § 552(b)(4) in construing our "competitive advantage" exemption. See Op. Att'y Gen. Nos. 94-015 and 91-390.
Finally, the possibility of a constitutional privacy issue in connection with personal financial records should be mentioned. See Op. Att'y Gen. No. 90-324. This right is not absolute and must be balanced against the public interest in disclosure. Id.; McCambridge v. City of Little Rock,298 Ark. 219, 766 S.W.2d 909 (1989). In the instant case, the records in question only provide the amount of the tax credit awarded to the recipient; it is my understanding that the financial records regarding the housing projects are not in question. This office has commented that when a private entity solicits public money, it does so at the expense of public scrutiny. Op. Att'y Gen. No. 85-100; see also Op. Att'y Gen. No. 83-190. Further, the ADFA is responsible in part for developing the means and methods for providing financing to eliminate the shortage of decent, safe, sanitary, and affordable residential housing for families of low and moderate income in the state. See A.C.A. 15-5-102(b)(5) (Repl. 1994). It is my opinion that the strong governmental interest in the management of the low-income housing credit funds allocated to the state more than likely would outweigh the tax credit recipient's privacy interest, if any, in the amount of the credit allocated. See generally
Op. Att'y Gen. No. 90-324.
In sum, because this situation presents very close questions of law and fact, it should be emphasized that only the judiciary can definitively resolve this matter. Nevertheless, it is my opinion that under the circumstances presented the identity of the recipient and the amount of the tax credit awarded should more than likely be released.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Warren T. Readnour.
Sincerely,
WINSTON BRYANT Attorney General
WB:WTR/cyh
[1] State income tax records are also specifically exempted under §25-19-105(b)(1); however, it is my understanding that the only income tax records that may possibly be at issue in your question are federal income tax records. Nevertheless, if the information in question did include an individual's state income tax records, the income tax information would be exempt from disclosure. See Op. Att'y Gen. No. 87-415; see also
A.C.A. § 26-18-303 (Supp. 1995) and A.C.A. § 26-51-813 (Supp. 1995).
[2] The Louisiana Attorney General has commented that Form W-2 would fall within the definition of returns or return information and the W-2 form of a school board employee would not be subject to disclosure. La. Atty. Gen. Op. No. 93-445. However, the Louisiana Attorney General opined that the information contained in the employee's W-2 form is not itself exempt from public disclosure under section 6103. (The same information contained in the employee's W-2 was held in the records of the school board (employer).) The Attorney General nevertheless concluded that it is reasonable for the public employee to assume that such information will remain confidential and, further, there is no overriding public interest in access to the information which would require its disclosure. La. Atty. Gen. Op. No. 93-445(A).