William F. Smith III, Esquire 209 West Second Street Post Office Box 428 Russellville, Arkansas 72811
Dear Mr. Smith:
I am writing in response to your request, made pursuant to A.C.A. § 25-19-105(c)(3)(B), and presumably on behalf of the custodian of the records, for an opinion on whether the custodian's decision to deny release of a videotape from a traffic stop by a police officer is consistent with the Arkansas Freedom of Information Act ("FOIA"), A.C.A. §§ 25-19-101 — 109 (Repl. 2002 and Sup. 2007). You state that the police stop in question "subsequently generated an internal affairs complaint." You also state that the officer in question subsequently resigned from the police department and was never suspended or terminated as a result of a complaint against him. Finally, you state that "it is [your] understanding that all videotapes from patrol cars of the police department are used by supervisors as personnel, job performance or evaluation records when reviewing officers annually or as a result of a complaint by the public." You ask my opinion as to whether the custodian's decision to withhold the videotape is "consistent with the exemptions of the Freedom of Information Act regarding employee evaluations, job performance records or personnel records. . . ."
RESPONSE
The consistency of the custodian's decision with the FOIA depends upon the proper classification of the videotape for purposes of the FOIA. In my opinion the question of whether the particular videotape qualifies as an "employee evaluation or job performance record" for purposes of exemption from disclosure is a question of fact dependent upon the circumstances surrounding its creation. In my opinion routine across-the-board videotaping of all police stops by a police department *Page 2 
likely does not, depending upon the facts, make such videotapes "employee evaluation or job performance records." In addition, in my opinion, the fact that a videotape of a traffic stop or other police conduct is subsequently used in the evaluation of an employee does not transform it into an evaluation or job performance record. The custodian's decision may thus be inconsistent with the FOIA in this regard.
Assuming the record is not, under the relevant facts, an "employee evaluation or job performance record," it is unclear whether the videotape qualifies as a "personnel record" for purposes of the FOIA. If so, it is subject to release except to the extent its disclosure would constitute a "clearly unwarranted invasion of personal privacy" of the officer or officers in question. This is a question of fact dependent upon the record's content. If the record is not a "personnel record," it may simply be within the definition of "public records" and not subject to either of these exemptions.[1] The proper classification of the record is critical, because different tests apply to the release of "employee evaluation and job performance records," personnel records, and records which are neither employee evaluation or job performance records nor personnel records. In this instance, the facts surrounding the creation of the record will determine its proper classification. I am not a fact-finder in the issuance of Attorney General opinions and thus cannot conclusively determine the matter in a particular instance. I have set out the applicable tests below.[2]
The FOIA provides for the disclosure upon request of certain "public records," which the Arkansas Code defines as follows:
 "Public records" means writings, recorded sounds, films, tapes, electronic or computer-based information, or data compilations in any medium, required by law to be kept or otherwise kept, and which constitute a record of the performance or lack of performance of official functions which are or should be carried *Page 3 
out by a public official or employee, a governmental agency, or any other agency wholly or partially supported by public funds or expending public funds. All records maintained in public offices or by public employees within the scope of their employment shall be presumed to be public records.
A.C.A. § 25-19-103(5)(A) (Supp. 2005). Given that the subject of the record is a former city employee, I believe that the records requested clearly qualify as "public records" under this definition. As one of my predecessors noted in Op. Att'y Gen. No. 1999-305, "If records fit within the definition of `public records' . . . they are open to public inspection and copying under the FOIA except to the extent they are covered by a specific exemption in that Act or some other pertinent law." Id. at 2.
You have mentioned two possibly pertinent exemptions. First, you reference the exemption for "employee evaluation or job performance records (A.C.A. § 25-19-105(c)(1)), which exempts "all employee evaluation or job performance records, including preliminary notes and other materials" unless there has been a "final administrative resolution" of any "suspension or termination proceeding" at which the records "form a basis" for the decision to suspend or terminate the employee and unless there is a "compelling public interest in disclosure." Second, you mention the "personnel records" exemption, which exempts "personnel records to the extent that disclosure would constitute a clearly unwarranted invasion of personal privacy."
Although neither of these categories of records is specifically defined in the FOIA, I and my predecessors have attempted to craft definitions for the terms. In this regard I and my predecessors have consistently opined that "employee evaluation or job performance records" are any records that were created by or at the behest of the employer and that detail the performance or lack of performance of the employee in question with regard to a specific incident or incidents.See, e.g., Ops. Att'y Gen. 2007-013; 2006-038; 2006-035; 2005-030; 2004-211; 2003-073; 98-006; 97-222; 95-351; 94-306; and 93-055. The record must also have been created for the purpose of evaluating an employee. See, e.g., Op. Att'y Gen. 2006-038; and 2004-012. The exemption promotes candor in a supervisor's evaluation of an employee's performance with a view toward correcting any deficiencies. See J. Watkins R. Peltz, THE ARKANSAS FREEDOM OF INFORMATION ACT (mm Press, 4th ed. 2004) at 196. *Page 4 
With regard to "personnel records" the Attorney General has consistently taken the position that "personnel records" are all records other than employee evaluation and job performance records that pertain to individual employees. See, e.g., Op. Att'y Gen. 2007-070 and 2006-035 (citing opinions defining "personnel records.")
In determining whether the videotape to which you refer is subject to public disclosure under the Act, the first task is to properly classify it, so that any applicable exemption may be applied. If the videotape is an "employee evaluation or job performance record," the three-part test set out above must be applied. Under that test, suspension or termination is a threshold requirement for release of such records.See Ops. Att'y Gen. 2007-025; 2006-150; 2005-267; 2001-125; 97-189 and 97-154. You state that no suspension or termination has occurred. Thus, if the record is an "employee evaluation or job performance record" it is not subject to disclosure. If it is a "personnel record," it is releaseable except to the extent that disclosure would "constitute a clearly unwarranted invasion of privacy." This inquiry involves a balancing test, weighing the employee's privacy interest against the public's interest in the information. See, e.g., Op. Att'y Gen.2007-226. This is obviously a question of fact dependent upon the content of the videotape, but it may be that little or nothing on the videotape would constitute a "clearly unwarranted invasion of personnel privacy" of the officer in question. If so the record would be subject to release, or at least subject to release with any necessary portions redacted. If it is neither an "employee evaluation or job performance record" nor a "personnel record," it may simply be a "public record" subject to no specific exemption from disclosure, and thus subject to inspection and coping under the FOIA. But see n. 1, supra.
You state that the police stop in question "subsequently generated an internal affairs complaint" and that "all videotapes from patrol cars of the police department are used by supervisors as personnel, job performance or evaluation records when reviewing officers annually or as a result of a complaint by the public." Although we do not have the benefit of any Arkansas Supreme Court case law interpreting the exemption for "employee evaluation or job performance records," my predecessors and I have previously stated that records relating to internal investigations are sometimes properly classified as "employee evaluation or job performance records." As my predecessor stated in Op. Att'y Gen. 2005-267:
 I have consistently opined that records in an Internal Affairs file that have been generated at the behest of an employer in the course of investigating a complaint against an employee *Page 5 
constitute "employee evaluation/job performance records" within the meaning of the FOIA. Ops. Att'y Gen. 2005-094; 2004-178; 2003-306; and 2001-063. I have also stated, however, that "any other records in the Internal Affairs file that are not employee evaluation/job performance records and that constitute `personnel records' must be evaluated under the standard of disclosability for personnel records." Op. Att'y Gen. 2003-306 at 3. Additionally, I have stated that "some of the records contained in [an] internal affairs file may not constitute either employee evaluation/job performance records or personnel records" and that "such records must be evaluated by the custodian to determine whether they are subject to other specific exemptions from disclosure." Id. at 4. Documents not created in the evaluation process do not come within the rationale behind the 25-19-105(c)(1) exemption. See Op. Att'y Gen. 2005-094. Proper classification of the records in the Internal Affairs file is therefore necessary to determine the applicable test for release of the documents.
Opinion 2005-267 at 5.
My predecessor specifically discussed a videotape contained in an internal affairs file in Op. Att'y Gen. 2006-150. In that opinion, the subject of the internal affairs investigation sought access to the investigative file, including a videotape contained in the file. As the person about whom the records were maintained, the requester had a right to obtain his own records even where the public would not have access to them. See A.C.A. § 25-19-105(c)(2) (granting the person about whom personnel or evaluation records are maintained or his designated representative the right to access his own records). The matter was complicated, however, by the fact that the file, including the videotape, also contained information relating to other officers. The issue revolved around to what extent the requester could have access to those portions of the file and/or videotape. My predecessor concluded that factual considerations would determine whether the videotape was an "employee evaluation or job performance record" of the other officers. In addressing the proper characterization of the videotape in the internal affairs file, my predecessor stated:
 . . . the circumstances giving rise to the creation of the videotape will be relevant in determining how to classify this record. See Ark. Op. Att'y Gen. No. 2001-191 (opining that if an unsolicited *Page 6 
oral complaint is reduced to writing as "a routine administrative act, and not as a result of a decision to investigate the particular complaint," the resulting document is a personnel record, not an employee evaluation/job performance record, and is consequently subject to disclosure if releasing the record would not constitute a "clearly unwarranted invasion of personal privacy," A.C.A. § 25-19-105(b)(12)). In Ark. Op. Att'y Gen. No. 2005-032, I summarized the operative principle as follows:
 I have previously opined that if a record was routinely created as a regular administrative practice and was not created as a part of an investigation of the employee, it does not constitute an employee evaluation/job performance record. See, e.g., Op. Att'y Gen. No. 2001-191; 2001-123. Moreover, the fact that a previously created record is later used in an internal investigation of an employee does not transform the record into an employee evaluation/job performance record. See Ops. Att'y Gen. Nos. 2001-191; 96-257A; 96-168; 96-033.
Id. at 8.[3] *Page 7 
Although my predecessor set out the applicable law in Op. Att'y Gen.2006-150, he could not determine the proper classification of the videotape in question in the absence of any facts concerning its content or the circumstances concerning its creation. Id. at 8. Similarly, in my opinion, the proper classification of the videotape about which you inquire depends upon the circumstances surrounding its creation, not its subsequent use. You have not provided any facts in this regard. I assume, however, that because your request refers to "a videotape from a stop by a police officer," and to the fact that "all videotapes from patrol cars" are later used by supervisors, that the tape in question involves one made from a camera mounted in or on a police vehicle. In my opinion routine across-the-board videotaping of all police stops by a police department likely does not, depending on the facts, invariably give rise to "employee evaluation or job performance records."
There may be any number of reasons a police department installs video cameras in patrol cars, some of which may not be related to evaluating the performance of employees. A department may install them to protect itself and its officers from liability in the case of citizen complaints. It may install them as a deterrent to inappropriate conduct by police or citizens captured on the tapes. It may install them for the purpose of providing evidence in criminal prosecutions. I thus cannot state, absent any facts in this regard, that videotapes such as you describe are invariably "created by or at the behest of a supervisor" and "for the purpose of evaluating an employee." That being said, it is possible that in certain circumstances, the facts would show that a tape was created for such purposes. For example, a particular police officer whose conduct was problematic might be subjected by his supervisors to an additional layer of scrutiny by having a camera placed in his vehicle. Without additional facts as to the impetus for the creation of the tape in question, I cannot come to any conclusions in this regard. I am not a fact-finder in the issuance of Attorney General opinions.
Assuming the videotape in question is not an "employee evaluation or job performance record" the question remains whether it would be properly classified as a "personnel record" or simply as a "public record," not subject to either of the above exemptions. Again, this is a question of fact. See, e.g., Op. Att'y Gen. 2007-070. Although this office has taken a fairly broad view of the definition of "personnel records" (defining them as "all records other than employee evaluation and job performance records that pertain to individual employees"), it is unclear, in my opinion, whether a videotape from a police patrol unit "pertains" to an individual *Page 8 
employee so as to render it a "personnel record" for purposes of the FOIA. Again, factual considerations may be important in the determination. I have found no helpful case law in Arkansas or any other jurisdiction on this point. Even if such a videotape is properly classified as a "personnel record," it would be subject to disclosure except to the extent its release would constitute a "clearly unwarranted invasion of personal privacy." This inquiry involves the application of a balancing test. See again, Op. Att'y Gen. 2007-226. Depending upon the content of the videotape, it may well be that little or nothing on the videotape would constitute a "clearly unwarranted invasion of personnel privacy" of the particular officer or officers for purposes of A.C.A. § 25-19-105(b)(12).[4]
If the record is properly classified as neither an "employee evaluation or job performance record," nor a "personnel record," in my opinion it may simply be classified as a "public record," subject to no applicable exemption. But see n. 1, supra. Again, I cannot come to a definitive conclusion in light of the unresolved factual issues. I thus cannot conclusively determine whether the custodian's decision is consistent with the FOIA.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
DM:ECW/cyh
[1] You do not state whether any law enforcement investigation is pending with regard to the incident, possibly triggering the applicability of A.C.A. § 25-19-105(b)(6), which exempts "undisclosed investigations by law enforcement agencies of suspected criminal activity." This exemption has been construed as applying while the investigation is still "ongoing." See Martin v. Musteen, 303 Ark. 656,799 S.W.2d 540 (1990).
[2] I note also in this regard that my duty to issue advisory opinions under A.C.A. § 25-19-105(c)(3)(B) extends only to "personnel or evaluation records." Because you have invoked these exemptions and the proper classification of the record is in question, I have provided my opinion.
[3] At least one rationale for focusing on the circumstances surrounding the creation of records, as opposed to their later use, arises from the reasons underlying the exemption. As indicated previously, the exemption for employee evaluation or job performance records:
 . . . reflects the public interest in maintaining an effective public employee evaluation system as well as the privacy interests of employees. Without an exemption for such records, supervisory personnel who perform the evaluations may not be candid in assessing employee performance. Also, routine disclosure of the records could undermine one important objective of the evaluation process — identification of weaknesses with an eye toward fostering improvement — by revealing an employee's deficiencies before he has an opportunity to correct them.
Watkins and Peltz, supra, at 196.
It is difficult to conclude that the listed purposes of the exemption are fostered where the record was not initially created in the evaluation process, but was only later used for that purpose. For example, disclosure of records not created for the purposes of evaluating an employee would presumably not affect the candor of an evaluator. This consideration is reinforced by the principle that exemptions from disclosure in the FOIA are to be construed narrowly.See, e.g., Orsini v. State, 340 Ark. 665, 13 S.W.3d 665 (2000);Byrne v. Eagle, 319 Ark. 587, 892 S.W.2d 487 (1995); Ragland v.Yeargan, 288 Ark. 81, 702 S.W.2d 23 (1986); Laman v. McCord,245 Ark. 401, 432 S.W.2d 753 (1968).
[4] I should note that a constitutional right to privacy is also implicated in some instances, either as to public employees or citizens.See e.g., McCambridge v. City of Little Rock, 298 Ark. 219,766 S.W.2d 909 (1989) and Op. Att'y Gen. 97-190.